## IN THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI

**SOUTH SUNFLOWER COUNTY HOSPITAL,**
**and COURTNEY PHILLIPS**　　　　　　　**PLAINTIFFS**

**VS.**　　　　　　　　　　　　　　　　**2023-** 0351

**THE TRAVELERS COMPANIES, INC.**
**d/b/a TRAVELERS INSURANCE**　　　　　　**DEFENDANTS**



FILED

NOV 2 7 2023

CAROLYN R HAMILTON
BY_____ D.C.

---

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs South Sunflower County Hospital ("SSCH") and Courtney Phillips, by and through their attorneys, bring this action for Declaratory Judgment against Defendant Travelers Insurance ("Travelers"). Plaintiffs show unto this Court the following:

1.　　　Plaintiffs request a trial by jury on all issues of the subject litigation.

### PARTIES

2.　　　South Sunflower County Hospital is a community hospital, owned and operated by Sunflower County, Mississippi, and its principal place of business is in Indianola, Mississippi.

3.　　　Courtney Phillips is an adult resident citizen of the State of Mississippi. Mr. Phillips is the chief executive officer of SSCH.

4.　　　Travelers is a foreign surety and insurance company (Company License #9000029) that may be served with process by service on either its agent and attorney for service of process appointed by law (pursuant to Miss Code Ann. §§ 83-21-1 and 83-5-11), the Mississippi Commissioner of Insurance, Mike Chaney, 1001 Wooolfk Building (Tenth Floor), 501 North West Street, Jackson, Mississippi 39201, or on its Registered Agent for Process, United States Corporation Company, 109 Executive Drive, Suite 3, Madison MS 39110-8497 5760 I-55 or as

otherwise provided by the Mississippi Rules of Civil Procedure and the statutes of the State of Mississippi. The home office address of Travelers is One Tower Square, Harford, CT 06183.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction of this matter. Miss. R. Civ. P. 57; *see also* Miss. Const. art. 6, § 156 (1890) and Miss. Code Ann. § 9-7-81

6.     Venue is proper because the events giving rise to the claims asserted against the Defendant in the underlying litigation are alleged to have occurred in Sunflower County, Mississippi, and the underlying civil action, which is the subject of this Declaratory Judgment, was originally filed in Circuit Court of South Sunflower County Hospital, removed, and is pending in the United States District Court for the Northern District of Mississippi, Greenville Division.

## FACTS

7.     From July 10, 2022 to July 10, 2023, SSCH was insured under policies issued by Travelers, identified by Policy Number 106552379. *See* 2022-2023 Policy attached hereto as **Exhibit A**.

8.     June 7, 2023, Chad and Kelsey Dowell filed a lawsuit against SSCH, and Courtney Phillips alleging, Intentional Infliction of Emotional Distress, Tortious Interference with Contract and Contract Expectancy, Breach of Contract and Bad Faith/ Breach of Covenant of Good Faith and Fair Dealings, Abuse of Process, and Slander of Title relating to a previous matter *South Sunflower County Hospital v. Kelsey Shirley Dowell*. *See* Underlying Complaint attached hereto as **Exhibit B**.

*Summary of the Allegations of Underlying Litigation*

9.      In their Complaint, the Dowells allege that SSCH and/or Courtney Phillips: engaged in engaged in reckless, intentional, malicious, and extreme and outrageous conduct in the ways set forth herein, including: (i) by authorizing, obtaining, and pursuing a premature default judgment, abusing that judgment to extort Kelsey Dowell into agreement to a judgment that was improper and would have obligated her to pay SSCH amounts to which it was not contractually entitled; (ii) by abusing an improper default judgment to liquidate the Dowells' bank account during the holiday season, leaving them with no cash on hand; and (iii) by intentionally and wrongfully causing Chad Dowell's ACO Payment to be withheld to further extort Kelsey Dowell and otherwise cause the Dowells emotional distress. **Exhibit B.**

10.     The Dowells alleged Courtney Phillips intentionally interfered with, and attempted to destroy contract expectancy, by authorizing, obtaining, and pursuing a premature default judgment, including through misrepresentations of material fact, and by using that default judgment to extort Kelsey Dowell into agreeing to the default judgment to avoid the risk of losing the settlement in the Sunflower Lawsuits. **Exhibit B.**

11.     Dowells alleged that SSCH refused to pay Chad Dowell ACO Payments. **Exhibit B**

12.     Further, the Dowells alleged that Courtney Phillips authorized a premature default judgment against the Dowells. **Exhibit B**

13.     Lastly, the Dowells alleged that by seeking the default judgment, which created a judgment lien on Dowells' properties, caused slander of title of said properties. **Exhibit B**

*South Sunflower County Hospital's Demand for Defense and Indemnity*

14.     SSCH and its chief executive officer Courtney Phillips submitted the underlying lawsuit to Travelers, requesting that defense and indemnification be provided. Travelers denied

SSCH's request, asserting that no defense was owed to SSCH due to, *inter alia*, the policy's Section III(a)(10) exclusion. *See* Letter to SSCH from Travelers attached hereto as **Exhibit C.**

15. Since Traveler's August 11, 2023 denial, counsel for SSCH has continued to keep Travelers apprised of the litigation status, including sending their own coverage opinion along with the Dowells' Complaint.

## DECLARATORY JUDGMENT

16. The "duty to defend arises when there is any potential for liability under the policy." *Sturkin v. Miss. Ass'n of Supervisors*, 315 So.3d 521, 537 (Miss. Ct. App. 2020). If the complaint states a claim that is arguably within the scope of coverage provided by the policy, the insurer must defend and, if necessary, indemnify its insured. *Barden,* 576 F.3d at 238 (citing *Am. Guar. & Liab. Ins.,* 273 F.3d at 610). An insurer may only refuse to defend when it is apparent from the face of the complaint that the allegations in the underlying action will not be covered. *Moeller v. American Guar. & Liab. Ins. Co.,* 707 So.2d 1062, 1069 (Miss.1996). However, when "an insurer becomes aware that the true facts, if established, present claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy coverage." *Auto. Ins. Co. of Hartford v. Lipscomb,* 75 So.3d 557, 559 (Miss 2011) (internal quotation omitted).

17. On July 6, 2023, SSCH sent letter to Travelers notifying Travelers that it had a duty to defend and indemnify SSCH and Courtney Phillips in the matter of *Chad Dowell and Kelsey Dowell v. South Sunflower County Hospital, JW Davis, PLLC; and Courtney Phillips.* Travelers sent a letter of receipt on July 10, 2023.

18.    August 9, 2023, SSCH provided Travelers with a detailed coverage opinion which concluded that, per the Directors and Officer Liability Policy's language, it owed a duty to defend and indemnify SSCH.

19.    On August 11, 2023 Travelers sent a letter to SSCH denying coverage. Travelers concluded that Exclusion III(A)(10) under the D&O Coverage Section applied to preclude coverage because the Dowells are Insured Persons as they were Employees of the Insured Organization at the time the Wrongful Acts occurred.

20.    Travelers relies upon this exclusion to determine that there is no coverage under the D&O policy. Travelers relied upon Sec. III (A)(10), which provides an exclusion for claims "by or on behalf of, or in the name or right of, any Insured" and that Inured includes Insured Persons which the Policy defines as "any natural person who was, is or becomes a[n]... Employee... of the Insured Organization." *See* **Exhibit A**. Travelers noted the definition of Insured includes Insured Person and Insured Organization, and that Insured Person includes any Employee. Travelers stated that the Dowells were Employees, and, as a result, their claims are excluded under the D&O coverage Exclusions.

21.    Under Section II of the D&O Coverage Section, an Insured is defined as:

Insured Person means:
1. any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, LLC Manager, member of the board of trustees, member of the board of regents, member of the board of governors, or a functional equivalent thereof, Executive Officer, Employee, or member of a duly constituted committee of the Insured Organization;

2. any employee of an independent management organization acting as an officer or as the administrator of the Insured Organization pursuant to a written contractual agreement with the Insured Organization and solely while performing his or her duties in such capacity as specified by such contract; or

3. any Independent Contractor, but only while acting in his or her capacity as such, and only if the Insured Organization actually indemnifies such Independent Contractor for liability arising out of any Claim.

In the event of the death, incapacity or bankruptcy of an Insured Person, any Claim against the estate, heirs, legal representatives or assigns of such Insured Person for a Wrongful Act of such Insured Person will be deemed to be a Claim against such Insured Person.

*See* **Exhibit A**.

22.     On August 11, 2023, along with coverage analysis, Travelers offered its opinion on the definition of Employee and Insured Traveler's analysis of the policy as follows:

"the definition [of Employee] must be read together with the definition of Wrongful Act. Read together, it is clear that the reference is for Wrongful Acts asserted *against* an Insured, not by an Insured. Wrongful At is defined, in part, as 'any actual or alleged act, error, omission…or any matter asserted *against* an Insured Person in his or her capacity as such.' In other words, the Policy is making it clear that a Wrongful Act asserted *against* an Employee is only covered if that Employee was an Insured as of the date of the alleged Wrongful Act."

23.     The Director and Officer's Liability Policy issued by Travelers defines Employee as:

a natural person whose labor or service is engaged by and directed by the Insured Organization and:
1. who is on the payroll of the Insured Organization, including:
     a. any in-house general counsel of the Insured Organization; and
     b. any other full-time, part-time, temporary and seasonal workers;
2. who is a volunteer; or
3. whose services have been leased by the Insured Organization.

*See* **Exhibit A** at II. Definitions pg. 2.

24.     The definition of Employee states "the status of an individual as an Employee shall be determined as of the date of the alleged Wrongful Act." *See* **Exhibit A** at II. Definitions pg. 2. Thus, as it relates to the subject of the Exclusion, the only relevant inquiry as it pertains a Wrongful Act is the timing of the Wrongful Act. The definition of Wrongful Act references "any actual or alleged act, error, misstatement, misleading statement, or breach of duty or neglect, by or any

matter asserted against Insured Person," either "in his or her capacity as such" or in his or her Outside Position as well as against the "Insured Organization." *Id.* at II. Definitions pg. 5. The wrongful acts alleged y the Dowells in the underlying complaint are those actions taken by Mr. Phillips and SSCH. At all relevant times to the underlying complaint, Mr. Phillips and SSCH are considered insureds under the policy.

25.     The Dowells' Complaint notes that the Dowells stopped working for SSCH in June 2022. The Dowells' claims arise from Wrongful Acts that occurred after June 2022, when the Dowells would not be considered Employee[s] under the policy, and, thus, would not be considered insureds. The Wrongful Act took place when Mr. Phillips and SSCH were insureds and when the claimants (the Dowells) were not insureds. The allegations are against an Insured and made by persons who are no longer Insureds. Therefore, the Section III (A)(10) Exclusion is not appropriate to deny coverage.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs SSCH and Courtney Phillips pray that this Court:

a. Declare that the terms and conditions of the Travelers insurance policy issued to SSCH require Travelers to provide a defense and, if necessary, indemnification for SSCH and Courtney Phillips to any and all claims arising out of the underlying litigation.

b. Award SSCH and Courtney Phillips all fees and costs they have incurred related to the underlying litigation, including interest.

c. Award SSCH and Courtney Phillips all fees costs they have incurred related to their efforts to obtain a defense to the underlying litigation, including but not limited to this Declaratory Judgment action, including interest.

d. Grant SSCH and Courtney Phillips any other relief this Court deems appropriate.

RESPECTFULLY SUBMITTED, this the 20th day of November 2023.

**SOUTH SUNFLOWER
COUNTY HOSTPIAL**

BY: _____
Christopher A. Herrin (MSBN 106486)
Jacob O. Malatesta (MSBN 102987)

COUNSEL FOR PLAINTIFFS

Jacob O. Malatesta (MSBN 102987)
Christopher A. Herrin (MSBN 106486)
Hagwood And Tipton, PC
124 One Madison Plaza
Suite 2300
Madison, MS 39110
Telephone: (601) 608-6300
Facsimile: (601) 362-3642
Email: jmalatesta@hatlawfirm.com
        cherrin@hatlawfirm.com

# EXHIBIT

# "A"



**TRAVELERS**

**PO Box 2950**
**Hartford, CT 06104-2950**

June 29, 2022

South Sunflower County Hospital
121 East Baker St
INDIANOLA, MS 38751

Re: Important Information about <u>**Claims Information Line**</u>

Dear South Sunflower County Hospital

Travelers Bond & Specialty Insurance is pleased to announce its **1-800-842-8496** Claims Information Line. This line is designed to provide insureds with an additional resource on how to report claims or those circumstances or events which may become claims.

Policyholders will be able to obtain assistance on the following topics from the Claims Information Line:

- The information that needs to be included with the claim notice
- The address, electronic mail address and/or facsimile number to which the policyholder can send claims related information
- Get questions on the claim process answered

The Declarations Page of your policy sets forth where you should report claims and claims related information. You should also review the policy's reporting requirements to be aware of how much time you have to report a claim to Travelers. The sooner Travelers is notified, the sooner we can become involved in the process and offer assistance to our policyholder. A delay in reporting may result in all or part of a matter to fall outside of the coverage provided.

The Claims Information Line should streamline the claim reporting process and allow policyholders to ask questions on what information is needed as well as other questions which will assist them in working with Travelers. While the Claims Information Line provides policyholders a valuable resource by answering questions and providing information, the line does not replace the reporting requirements contained in the Policy.

We hope this improvement to customer service is something our policyholders will find helps them understand the claim process and provides them a resource for reporting.

LTR-4035 Ed. 06-09
© 2009 The Travelers Indemnity Company. All rights reserved.



**TRAVELERS**

**P.O. Box 2950**
**Hartford, CT 06104-2950**

06/29/2022

South Sunflower County Hospital

121 East Baker St
INDIANOLA, MS 38751

**RE: Risk Management PLUS+ Online® from Travelers Bond & Specialty Insurance** (www.rmplusonline.com)

As a Travelers Bond & Specialty Insured you receive risk management services, at no additional cost, to help protect you and your business.

Risk Management PLUS+ Online, is a robust website to assist you in the mitigation of risk relative to Healthcare Organizations Directors, Officers and Trustees Liability, Employment Practices Liability, and CyberRisk.

Highlights of Risk Management PLUS+ Online include:
- Thousands of articles on a variety of risk management topics
- Topical webinars and podcasts on current issues
- Checklists to assist in managing risk
- Web based training
- Model Employee Handbook, including policies and forms for downloading or printing that reduce risks in the workplace.

The following Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

Thank you for choosing Travelers Bond & Specialty Insurance for your insurance needs. Travelers is a market leader in providing management liability and crime coverages that are specifically customized for your organization.

<u>Instructions for Registration & Orientation to Risk Management PLUS+ Online®</u>

*Registration for Site Administrators:*
The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities. To register:

1. Go to   www.rmplusonline.com.
2. In the Sign-In box, click   **Register.**
3. Enter the password/passcode: TRVP130000
4. Fill in the Registration Information and click   **Submit.**
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*
1. Go to   www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on   **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.

© 2017 The Travelers Indemnity Company. All rights reserved.



**TRAVELERS**

PO Box 2950
Hartford, CT 06104-2950

**Employment Practices Liability Hotline**

As part of the services provided through Risk Management PLUS+ Online®, Travelers Bond & Specialty Insurance is pleased to provide its Employment Practices Liability policyholders with up to one hour of access to a toll-free hotline designed to provide quick, practical risk management guidance on day-to-day workplace issues.

From reviewing the proper steps for a sexual harassment investigation to discussing general factors to consider before making employment decisions, the firm's attorneys are available to assist policyholders in managing their workplace risk and minimizing employment-related claims. This hotline is staffed by a nationally recognized employment law firm exclusively dedicated to representing management on workplace issues and is available at no additional cost to Employment Practices Liability policyholders.

To utilize the hotline, call **1-866-EPL-TRAV (1-866-375-8728)**.

We encourage policyholders to take advantage of this risk management tool. For more information about the hotline, go to www.rmplusonline.com/EPLhotline.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law. Availability of coverage referenced in this document can depend on underwriting qualifications and state regulations.

Travelers Casualty and Surety Company of America, PO Box 2950, Hartford, CT 06104-2950

This notice provides no coverage, nor does it change any policy terms. To determine the scope of coverage and the insured's rights and duties under the policy, read the entire policy carefully. For more information about the content of this notice, the insured should contact their agent or broker. If there is any conflict between the policy and this notice, the terms of the policy prevail.

## Independent Agent And Broker Compensation Notice

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html.

Or write or call:

**Travelers, Agency Compensation**
**P.O. Box 2950**
**Hartford, Connecticut 06104-2950**

**(866) 904.8348**

 **TRAVELERS**

**Wrap+®**
*for HEALTH CARE ORGANIZATIONS*
*DECLARATIONS*

**POLICY NO.  106552379**

**Travelers Casualty and Surety Company of America**
**Hartford, Connecticut**
(A Stock Insurance Company, herein called the Company)

**THE LIABILITY COVERAGES ARE WRITTEN ON A CLAIMS-MADE BASIS. THE LIABILITY COVERAGES COVER ONLY CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED BY DEFENSE EXPENSES, AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE COMPANY HAS NO DUTY TO DEFEND ANY CLAIM UNLESS DUTY-TO-DEFEND COVERAGE HAS BEEN SPECIFICALLY PROVIDED HEREIN.**

| ITEM 1 | **NAMED INSURED:** |
|---|---|

South Sunflower County Hospital

D/B/A:

Principal Address:
121 East Baker St
INDIANOLA, MS 38751

| ITEM 2 | **POLICY PERIOD:** |
|---|---|

Inception Date:  July 10, 2022          Expiration Date:  July 10, 2023
12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1.

| ITEM 3 | **ALL NOTICES OF CLAIMS OR LOSS TO THE COMPANY MUST BE ADDRESSED TO:** |
|---|---|

Email: BSIclaims@travelers.com
Fax: 1-888-460-6622
Mail: Travelers Bond & Specialty Insurance Claim
    P.O. Box 2989
    Hartford, CT 06104-2989

Overnight Mail : Travelers Bond & Specialty Insurance Claim
        One Tower Square, S202A
        Hartford, CT 06183
For questions related to claim reporting or handling, please call 1-800-842-8496.

| ITEM 4 | **COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:** |
|---|---|

Only those coverages marked "☒" are included in this policy.

**Liability Coverages**

☒ **Health Care Organization Directors, Officers and Trustees Liability**

☒ **Health Care Organization Employment Practices Liability**

| ITEM 5 | **COVERAGE FEATURES:** |
|---|---|

Only those coverage features marked "☒ Applicable" are included in this policy.

**Health Care Organization Directors, Officers and Trustees Liability**

WHC-2001 Ed. 01-08
© 2008 The Travelers Indemnity Company All Rights Reserved

| | | |
|---|---|---|
| **Limit of Liability:** | $1,000,000 | for all **Claims** |
| **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| **Additional Defense Limit of Liability:** | Not Covered | for all **Claims** |
| **Antitrust Claim Limit of Liability:** | $1,000,000 | which amount is included within, and not in addition to, the Limit of Liability stated herein |
| **Antitrust Claim Coinsurance Percentage:** | 10% | for each **Antitrust Claim** |
| **EMTALA Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **EMTALA Coverage Limit of Liability:** | $250,000 | which amount is included within, and not in addition to, the Limit of Liability stated herein |
| **Excess Benefit Transaction Tax Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **Excess Benefit Transaction Tax Coverage Limit of Liability:** | $50,000 | which amount is included within, and not in addition to, the Limit of Liability stated herein |
| **HIPAA Violation Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **HIPAA Violation Coverage Limit Of Liability:** | $50,000 | which amount is included within, and not in addition to, the Limit of Liability stated herein |
| **Internal Revenue Code Violation:** | ☒ Applicable | ☐ Not Applicable |
| **Internal Revenue Code Violation Limit of Liability:** | $100,000 | which amount is included within, and not in addition to, the Limit of Liability stated herein |
| **Retention:** | $15,000<br>$15,000<br>$75,000 | for each **Claim** under Insuring Agreement B.<br>for each **Claim** under Insuring Agreement C.<br>for each **Antitrust Claim** |
| **Prior and Pending Proceeding Date:** | July 10, 2006 | |
| **Continuity Date:** | July 10, 2006 | |

| ITEM 5 CONTINUED | **COVERAGE FEATURES (CONTINUED):** |
|---|---|

Only those coverage features marked "☒ Applicable" are included in this policy.

### Health Care Organization Employment Practices Liability

| | | | |
|---|---|---|---|
| **Limit of Liability:** | $1,000,000 | for all **Claims** | |
| **Third Party Wrongful Act Coverage:** | ☒ Applicable | ☐ Not Applicable | |
| **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable | |
| **Additional Defense Limit of Liability:** | Not Covered | for all **Claims** | |
| **Retention:** | $15,000 | for each **Claim** under Insuring Agreement A. | |
| | $15,000 | for each **Claim** under Insuring Agreement B., if applicable. | |
| **Prior and Pending Proceeding Date:** | **Claims** for **Wrongful Employment Practices**: | July 10, 2006 | |
| | **Claims** for **Third Party Wrongful Acts**: | July 10, 2018 | |
| **Continuity Date:** | **Claims** for **Wrongful Employment Practices**: | July 10, 2006 | |
| | **Claims** for **Third Party Wrongful Acts**: | July 10, 2018 | |

| ITEM 6 | **PREMIUM FOR THE POLICY PERIOD:** |
|---|---|

$9,201.00

N/A          Annual Installment Premium if ITEM 10 below is applicable

| ITEM 7 | **TYPE OF LIABILITY COVERAGE:** |
|---|---|

☒ Reimbursement

☐ Duty-to-Defend

Only the type of liability coverage marked "☒" is included in this policy.

| ITEM 8 | **LIABILITY COVERAGE EXTENDED REPORTING PERIOD:** |
|---|---|

Additional Premium Percentage:     75 %

Additional Months:     12

(If exercised in accordance with Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of the Liability Coverage Terms and Conditions)

| ITEM 9 | **LIABILITY COVERAGE RUN-OFF EXTENDED REPORTING PERIOD:** |
|---|---|

Additional Premium Percentage:     125 %

Additional Months:     36

(If exercised in accordance with Section III. CONDITIONS K. CHANGE OF CONTROL of the Liability Coverage Terms and Conditions)

| ITEM 10 | **ANNUAL REINSTATEMENT OF THE LIABILITY COVERAGE LIMIT OF LIABILITY:** |
|---|---|
| | ☐ Applicable |
| | ☒ Not Applicable |
| | Only those coverage features marked "☒Applicable" are included in this policy. |

| ITEM 11 | **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:** |
|---|---|
| | ACF-7007-0811; ACF-7006-0511; AFE-19029-0719; AFE-19030-0920; LIA-3001-0109; LIA-10002-0610; LIA-19097-0315; LIA-19109-0415; LIA-10250-1215; LIA-4014-1113; HCD-3001-0108; HCD-7010-0108; HCD-7011-0108; HCD-7015-0108; HCD-7028-1108; HCD-10009-0211; HCD-19001-0115; HCD-19002-0115; HCD-19003-0115; HCD-19007-0115; HCD-19009-0115; HCD-9005-0810; HCD-19012-0115; HCE-3001-0108; HCE-10001-0910; HCE-19001-0115; HCE-19003-0115; HCE-19009-0318; LIA-7011-0109; LIA-19094-0115; LIA-19095-0115; LIA-5050-1107 |

| ITEM 12 | **LIABILITY COVERAGE SHARED LIMIT OF LIABILITY:** | |
|---|---|---|
| | $1,000,000 | for all **Claims** under the following **Liability Coverages:** |
| | | Health Care Organization Directors, Officers and Trustees Liability |
| | | Health Care Organization Employment Practices Liability |

The Declarations, the **Application**, the Liability Coverage Terms and Conditions, each purchased **Liability Coverage**, as set forth in ITEM 4 of the Declarations, and any endorsements attached thereto, constitute the entire agreement between the Company, the entity named in ITEM 1 of the Declarations, and any **Insured**.

Countersigned By
(where applicable)

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

President                           Corporate Secretary

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS-COVERAGE NOTICE ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

Notice provided to the Company of any:

1. **Claim, Potential Claim, Settlement Program Notice,** or circumstances which may give rise to a **Claim** under any Management Coverage or **Liability Coverage**; or

2. loss or situation that may result in loss, **Insured Event,** or **Identity Fraud** under any Crime Coverage or Other Coverage;

shall be deemed to have been provided under the Policy in its entirety.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

ACF-7007 Ed. 08-11
© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REMOVAL OF SHORT-RATE CANCELLATION ENDORSEMENT

This endorsement changes the following:
**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

In any cancellation, termination or non-renewal provision, any reference to computing a premium on a short rate basis is replaced with a reference to computing such premium on a pro-rata basis.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **106552379**

ACF-7006 Ed. 05-11                                                                                               Page 1 of 1
© 2011 The Travelers Indemnity Company. All rights reserved.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

**Cap On Losses From Certified Acts Of Terrorism Endorsement**

The following is added to this Policy. This provision can limit coverage for any loss arising out of a *Certified Act Of Terrorism* if such loss is otherwise covered by this Policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of *Certified Acts Of Terrorism* in another endorsement to this policy.

If aggregate insured losses attributable to *Certified Acts Of Terrorism* exceed $100 billion in a calendar year and the Insurer has met its insurer deductible under *TRIA*, the Insurer will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

*Certified Act Of Terrorism* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of *TRIA*, to be an act of terrorism pursuant to *TRIA*. The criteria contained in *TRIA* for a *Certified Act Of Terrorism* include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

*TRIA* means the federal Terrorism Risk Insurance Act of 2002 as amended.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

**Federal Terrorism Risk Insurance Act Disclosure Endorsement**

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA"), establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is 80% of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA).

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is no more than one percent of your premium, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA. Please note that no separate additional premium charge has been made for coverage for Insured Losses covered by TRIA. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium.



**LIABILITY COVERAGE TERMS AND CONDITIONS**

*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE COVERAGE LIMITS.*
*PLEASE READ THE POLICY CAREFULLY.*

**CONSIDERATION CLAUSE**

IN CONSIDERATION of the payment of the premium, in reliance on the statements in the **Application,** subject to the Declarations, and pursuant to all the terms, conditions, exclusions and limitations of this **Policy**, the Company and the Insureds agree as follows:

**I. GENERAL**

These **Liability Coverage** Terms and Conditions apply to all **Liability Coverages.** Unless otherwise stated to the contrary, the terms and conditions of each **Liability Coverage** apply only to that particular **Liability Coverage.** If any provision in these Liability Coverage Terms and Conditions is inconsistent or in conflict with the terms and conditions of any particular **Liability Coverage**, such **Liability Coverage's** terms, conditions, and limitations will control for purposes of that **Liability Coverage.**

**II. DEFINITIONS**

Wherever appearing in this **Liability Policy**, the following words and phrases appearing in bold type will have the meanings set forth in this Section II. DEFINITIONS:

**A.** *Additional Defense Limit of Liability* means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage.** If *"Not Applicable"* is shown as the amount of any **Liability Coverage's** **Additional Defense Limit of Liability**, then any reference to the **Additional Defense Limit of Liability** will be deemed to be deleted from such **Liability Coverage.**

**B.** *Annual Reinstatement of the Liability Coverage Limit of Liability* means, if included in ITEM 10 of the Declarations, the reinstatement of each applicable **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for each applicable **Liability Coverage** for each **Policy Year** during the **Policy Period.**

**C.** *Application* means the application deemed to be attached to and forming a part of this **Liability Policy**, including any materials submitted and statements made in connection with that application. If the **Application** uses terms or phrases that differ from the terms defined in this **Liability Policy**, no inconsistency between any term or phrase used in the **Application** and any term defined in this **Liability Policy** will waive or change any of the terms, conditions and limitations of this **Liability Policy.**

**D.** *Change of Control* means:

   1. the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

   2. the obtaining by any person, entity or affiliated group of persons or entities the right to elect, appoint or designate more than fifty percent (50%) of the board of directors, board of trustees, board of managers, or functional equivalent thereof or to exercise a majority control of the board of directors, board of trustees, board of managers, or a functional equivalent thereof of the **Named Insured.**

**E.** *Claim* has the meaning set forth in the applicable **Liability Coverage.**

**F.**      *Defense Expenses* means reasonable and necessary legal fees and expenses incurred by the Company or the **Insured**, with the Company's consent, in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such **Claim**; provided, that **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any employee of such **Insured**.

**G.**      *Executive Officer* has the meaning set forth in the applicable **Liability Coverage**.

**H.**      *Financial Insolvency* means, with respect to the **Insured Organization** or any **Outside Entity**, the appointment of a receiver, conservator, liquidator, trustee, or similar official; or the inability of the **Insured Organization** or **Outside Entity** financially to indemnify the **Insured Persons**.

**I.**      *Foreign Parent Corporation* means any entity incorporated outside the United States, which owns more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint the **Named Insured's** board of directors, board of trustees or board of managers, or to exercise a majority control of the board of directors, board of trustees or board of managers of the **Named Insured**.

**J.**      *Insured* has the meaning set forth in the applicable **Liability Coverage**.

**K.**      *Insured Organization* has the meaning set forth in the applicable **Liability Coverage**.

**L.**      *Insured Person* has the meaning set forth in the applicable **Liability Coverage**.

**M.**      *Liability Coverage* means, individually or collectively, the **Liability Coverages** that have been purchased, as indicated in ITEM 4 of the Declarations.

**N.**      *Liability Coverage Limit of Liability* means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage**.

**O.**      *Liability Coverage Shared Limit of Liability* means the amount set forth in ITEM 12 of the Declarations. If *"Not Applicable"* is shown in ITEM 12 of the Declarations or ITEM 4 of the Declarations indicates that only one **Liability Coverage** is included in this **Liability Policy**, any reference to either the **Liability Coverage Shared Limit of Liability** or ITEM 12 of the Declarations will be deemed to be deleted from this **Liability Policy**.

**P.**      *Liability Policy* means, collectively, the Declarations, the **Application**, the Liability Coverage Terms and Conditions, each purchased **Liability Coverage**, and any endorsements attached thereto.

**Q.**      *LLC Manager* means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of an **Insured Organization** that is a limited liability company.

**R.**      *Loss* has the meaning set forth in the applicable **Liability Coverage**.

**S.**      *Named Insured* means any entity named in ITEM 1 of the Declarations.

**T.**      *Policy Period* means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date of cancellation or termination of this **Liability Policy**.

**U.**      *Policy Year* means:
         1.    the period of one year following the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof;
         2.    the time between the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof and the effective date of cancellation or termination of this **Liability Policy** if such time period is less than one year;

3.     with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** if the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** is less than one year; and

4.     with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and the effective date or cancellation or termination of this **Liability Policy**, if such time is less than one year.

V.     ***Pollutant*** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

W.     ***Potential Claim*** means any **Wrongful Act** that may subsequently give rise to a **Claim**.

X.     ***Related Wrongful Act*** means all **Wrongful Acts** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision.

Y.     ***Subsidiary*** has the meaning set forth in the applicable **Liability Coverage**.

Z.     ***Wage and Hour Law*** means any federal, state, or local law or regulation governing or related to the payment of wages including the payment of overtime, on-call time, minimum wages, meals, rest breaks or the classification of employees for the purpose of determining employees' eligibility for compensation under such law(s).

AA.     ***Wrongful Act*** has the meaning set forth in the applicable **Liability Coverage**.

---

## III. CONDITIONS

### A. TERRITORY

This **Liability Policy** applies to **Claims** made or **Wrongful Acts** occurring anywhere in the world.

### B. RETENTION

The **Insured** shall bear uninsured at its own risk the amount of any applicable Retention, which amount must be paid in satisfaction of **Loss**.

If any **Claim** gives rise to coverage under a single **Liability Coverage**, the Company has no obligation to pay **Loss**, including **Defense Expenses**, until the applicable Retention amount set forth in ITEM 5 of the Declarations has been paid by the **Insured**.

If any **Claim** is subject to different Retentions under a single **Liability Coverage**, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions will not exceed the largest applicable Retention under such **Liability Coverage**.

If any **Claim** gives rise to coverage under two or more **Liability Coverages**, the Company shall have no obligation to pay **Loss**, including **Defense Expenses**, until the largest Retention that is applicable to such **Claim** under such **Liability Coverages** has been paid by the **Insured**.

No Retention will apply to an **Insured Person** if indemnification by the **Insured Organization** is not permitted by law or if the **Insured Organization** is unable to make such indemnification solely by reason of its **Financial Insolvency**. The **Insured Organization** will be conclusively deemed to have indemnified all **Insured Persons** to the extent that the **Insured Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Insured Organization**.

The Company, at its sole discretion, may pay all or part of the Retention amount on behalf of any **Insured**, and in such event, the **Insureds** agree to repay the Company any amounts so paid.

---

**C.** **LIMITS OF LIABILITY**

1. Liability Coverage Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, and further subject to any applicable **Liability Coverage Shared Limit of Liability** or **Annual Reinstatement of the Liability Coverage Limit of Liability**:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under each applicable **Liability Coverage** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the **Declarations** for each applicable **Liability Coverage**; and

   b. in the event that a **Claim** triggers more than one **Liability Coverage**, the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for any such **Claim** will not exceed the sum of the remaining **Liability Coverage Limits of Liability** of the applicable **Liability Coverages**.

2. Liability Coverage Shared Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established; and further subject to any applicable **Annual Reinstatement of the Liability Coverage Limit of Liability**, if ITEM 4 of the Declarations indicates that more than one **Liability Coverage** has been purchased and a **Liability Coverage Shared Limit of Liability** is shown in ITEM 12 of the Declarations:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will not exceed the remaining **Liability Coverage Shared Limit of Liability**; and

   b. if the **Liability Coverage Shared Limit of Liability** is exhausted by the payment of amounts covered under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, the premium for all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be fully earned, all obligations of the Company under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations.

3. Annual Reinstatement of the Liability Coverage Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 10 of the Declarations includes an **Annual Reinstatement of the Liability Coverage Limit of Liability**:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** made during each **Policy Year** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the Declarations for each applicable **Liability Coverage** or, if applicable, the remaining **Liability Coverage Shared Limit of Liability**; and

   b. with regard to the Extended Reporting Period or the Run-Off Extended Reporting Period, if applicable, the Company's maximum limit of liability for all **Claims** made during the Extended Reporting Period or the Run-Off Extended Reporting Period will not exceed the remaining **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for the last **Policy Year** in effect at the time of the termination or cancellation of the **Liability Coverage** or the **Change of Control**.

4.    Other Provisions

Payment of **Defense Expenses** will reduce and may exhaust all applicable limits of liability. In the event the amount of **Loss** exceeds the portion of the applicable limit of liability remaining after prior payments of **Loss**, the Company's liability will not exceed the remaining amount of the applicable limit of liability. In no event will the Company be obligated to make any payment for **Loss** , including **Defense Expenses**, with regard to a **Claim** after the applicable limit of liability has been exhausted by payment or tender of payment of **Loss**.

If a **Liability Coverage Limit of Liability** is exhausted by the payment of amounts covered under such **Liability Coverage**, the premium for such **Liability Coverage** will be fully earned, all obligations of the Company under such **Liability Coverage** will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under such **Liability Coverage**.

## D.    ADDITIONAL DEFENSE COVERAGE

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 5 of the Declarations indicates that any **Liability Coverage** includes Additional Defense Coverage, **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of any **Claim** made during the **Policy Period** under any such **Liability Coverage** will apply first to and reduce the **Additional Defense Limit of Liability. The Additional Defense Limit of Liability** will be in addition to, and not part of, such **Liability Coverage's** applicable **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable. The **Additional Defense Limit of Liability** is applicable to **Defense Expenses** only. If the **Annual Reinstatement of the Liability Coverage Limit of Liability** is applicable, the **Additional Defense Limit of Liability** will be reinstated for each **Policy Year**.

Upon exhaustion of the Additional Defense Limit of Liability:

1.    **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of a **Claim** are part of and not in addition to any applicable limit of liability; and

2.    payment by the Company or the **Insured** , with the Company's consent, of **Defense Expenses** reduces any applicable limit of liability.

## E.    CLAIM DEFENSE

1.    If Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any **Claim** covered by a **Liability Coverage**, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided, that the Company will not be obligated to defend or to continue to defend any **Claim** after the applicable limit of liability has been exhausted by payment of **Loss**.

2.    If Reimbursement coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations:

a.    the Company will have no duty to defend any **Claim** covered by a **Liability Coverage**. It will be the duty of the **Insured** to defend such **Claims**; and the Company will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Liability Coverage** and the selection of appropriate defense counsel; and

b.    upon written request, the Company will advance **Defense Expenses** with respect to such **Claim**. Such advanced payments by the Company will be repaid to the Company by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses** under such **Liability Coverage**. As a condition of any payment of **Defense Expenses** under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of any **Claim** is not covered under such **Liability Coverage**.

3.  The **Insured** agrees to cooperate with the Company and, upon the Company's request, assist in making settlements and in the defense of **Claims** and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of an act or omission insured under such **Liability Coverage**, will attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

**F.  INSURED'S DUTIES IN THE EVENT OF A CLAIM**

The **Insured's** duty to report a **Claim** commences on the earliest date a written notice thereof is received by an **Executive Officer**. If an **Executive Officer** becomes aware that a **Claim** has been made against any **Insured**, the **Insured**, as a condition precedent to any rights under this **Liability Policy**, must give to the Company written notice of the particulars of such **Claim**, including all facts related to any alleged **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, and the dates of the alleged events, as soon as practicable. The **Insured** agrees to give the Company such information, assistance and cooperation as it may reasonably require.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt. The **Insured** agrees not to voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or, except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld. The Company is not liable for any settlement, **Defense Expenses**, assumed obligation or admission to which it has not consented.

**G.  NOTICE OF POTENTIAL CLAIMS**

If an **Insured** becomes aware of a **Potential Claim** and gives the Company written notice of the particulars of such **Potential Claim**, including all facts related to the **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, the dates of the alleged events, and the reasons for anticipating a **Claim**, as soon as practicable during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, any **Claim** subsequently made against any **Insured** arising out of such **Wrongful Act** will be deemed to have been made during the **Policy Period**.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt.

**H.  RELATED CLAIMS**

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim**, whichever is applicable, for purposes of this **Liability Policy**. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made at the time the first of such **Claims** or **Potential Claims** for **Related Wrongful Acts** was made whether prior to or during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

**I.  SUBROGATION**

In the event of payment under this **Liability Policy**, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** agrees to execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

**J.  RECOVERIES**

All recoveries from third parties for payments made under this **Liability Policy** will be applied, after first deducting the costs and expenses incurred in obtaining such recovery, in the following order of priority:

1.  first, to the Company to reimburse the Company for any Retention amount it has paid on behalf of any **Insured**;
2.  second, to the **Insured** to reimburse the **Insured** for the amount it has paid which would have been paid hereunder but for the fact that it is in excess of the applicable limits of liability hereunder;

3. third, to the Company to reimburse the Company for the amount paid hereunder; and
4. fourth, to the **Insured** in satisfaction of any applicable Retention;

provided, recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit.

**K. CHANGE OF CONTROL**

If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed after such event. No coverage will be available hereunder for **Loss**, including **Defense Expenses**, for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Wrongful Act** committed or allegedly committed after such event. After any such event, the **Liability Policy** may not be canceled by the **Named Insured** and the entire premium for the **Liability Policy** will be deemed fully earned.

Upon the occurrence of any **Change of Control**, the **Named Insured** will have the right to give the Company notice that it desires to purchase a Run-Off Extended Reporting Period for any **Liability Coverage** for the period set forth in ITEM 9 of the Declarations following the effective date of such **Change of Control**, regarding **Claims** made during such Run-Off Extended Reporting Period against persons or entities who at the effective date of the **Change of Control** are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to such **Change of Control** and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1. such Run-Off Extended Reporting Period will not provide new, additional or renewed limits of liability; and
2. the Company's total liability for all **Claims** made during such Run-Off Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the **Change of Control**.

The premium due for the Run-Off Extended Reporting Period will equal the percentage set forth in ITEM 9 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Period** prior to the **Change of Control**. The entire premium for the Run-Off Extended Reporting Period will be deemed fully earned at the commencement of such Run-Off Extended Reporting Period.

The right to elect the Run-Off Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days of the **Change of Control**. In the event the Run-Off Extended Reporting Period is purchased, the option to purchase the Extended Reporting Period in Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions will terminate. In the event the Run-Off Extended Reporting Period is not purchased, the **Named Insured** will have the right to purchase the Extended Reporting Period under the terms of Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions.

If, at any time during the **Policy Period**, the **Insured Organization** eliminates or reduces its ownership interest in, or control over a **Subsidiary**, such that it no longer meets the definition of a **Subsidiary**, coverage will continue for such entity but only with regard to **Claims** for **Wrongful Acts** which occurred wholly during the time that the entity was a **Subsidiary**.

**L. ACQUISITIONS**

If, during the **Policy Period**, the **Insured Organization** acquires or forms a **Subsidiary**, this **Liability Policy** will provide coverage for such **Subsidiary** and its respective **Insured Persons**, subject to all other terms and conditions of this **Liability Policy**, provided written notice of such acquisition or formation has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within ninety (90) days after the effective date of such formation or acquisition. Coverage for such **Subsidiary** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Named Insured** has paid the Company any additional premium as may be required by the Company.

The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired or formed **Subsidiary** do not exceed 30% of the total assets of the **Insured Organization** as reflected in the **Insured Organization's** most recent fiscal year-end financial statement; or (2) the acquisition or formation occurs less than 90 days prior to the end of the **Policy Period.**

**M.      SPOUSAL AND DOMESTIC PARTNER LIABILITY COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply to **Loss** resulting from a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or a person qualifying as a domestic partner under the provisions of any applicable federal, state or local law (a "Domestic Partner") of an **Insured Person**, but only if and so long as:

1.      the **Claim** against such spouse or Domestic Partner results from a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the Domestic Partner; and

2.      such **Insured Person** and his or her spouse or Domestic Partner are represented by the same counsel in connection with such **Claim.**

No spouse or Domestic Partner of an **Insured Person** will, by reason of this subsection have any greater right to coverage under this **Liability Policy** than the **Insured Person** to whom such spouse is married, or to whom such Domestic Partner is joined.

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a spouse or Domestic Partner of an **Insured Person** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such spouse or Domestic Partner.

**N.      FOREIGN PARENT CORPORATION COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply coverage for **Defense Expenses** resulting from any **Claim** made against a **Foreign Parent Corporation**, but only if and so long as:

1.      such **Claim** results from a **Wrongful Act** actually or allegedly committed solely by any **Insured**;

2.      such **Insured** and the **Foreign Parent Corporation** are represented by the same counsel in connection with such **Claim**; and

3.      such **Insured** is included as a co-defendant.

No **Foreign Parent Corporation** will, by reason of this subsection, have any greater right to coverage under this **Liability Policy** than any **Insured.**

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a **Foreign Parent Corporation** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such **Foreign Parent Corporation** or any member of the board of directors, officer, employee, or functional equivalent thereof.

**O.      EXTENDED REPORTING PERIOD**

At any time prior to or within 60 days after the effective date of termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1.      such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and

2.      the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation. The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within 60 days of the effective date of the termination or cancellation.

**P.    ALLOCATION**

1.    If Duty-to-Defend coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then such covered **Loss** and uncovered loss will be allocated as follows:

a.    one hundred percent (100%) of **Defense Expenses** incurred by the **Insureds** who are afforded coverage for such **Claim** will be allocated to covered **Loss**; and

b.    all loss other than **Defense Expense** will be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under such **Liability Coverage**. In making such a determination, the **Insured Organization**, the **Insured Persons** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts. In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.

2.    If Reimbursement coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, the **Insureds** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such a determination, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under the applicable **Liability Coverage**. In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.

**Q.    CANCELLATION**

The Company may cancel this **Liability Policy** for failure to pay a premium when due, in which case twenty (20) days written notice will be given to the **Named Insured**, unless, payment in full is received within twenty (20) days of the **Named Insured's** receipt of such notice of cancellation. The Company has the right to the premium amount for the portion of the **Policy Period** during which this **Liability Policy** was in effect.

Subject to the provisions set forth in Section III. CONDITIONS K. CHANGE OF CONTROL, the **Named Insured** may cancel any **Liability Coverage** by mailing the Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations, such cancellation will be effective. In the event the **Named Insured** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The Company will not be required to renew this **Liability Policy** upon its expiration. If the Company elects not to renew, it will provide to the **Named Insured** written notice to that effect at least thirty (30) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**R. ACTION AGAINST THE COMPANY**

No action will lie against the Company unless there has been full compliance with all of the terms of this **Liability Policy.**

No person or organization has any right under this **Liability Policy** to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor may the Company be impleaded by an **Insured** or said **Insured's** legal representative. Bankruptcy or insolvency of any **Insured** or an **Insured's** estate does not relieve the Company of any of its obligations hereunder.

**S. CHANGES**

Only the **Named Insured** is authorized to make changes in the terms of this **Liability Policy** and solely with the Company's prior written consent. This **Liability Policy's** terms can be changed, amended or waived only by endorsement issued by the Company and made a part of this **Liability Policy.** Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person will not effect a waiver or change to any part of this **Liability Policy,** or estop the Company from asserting any right under the terms, conditions and limitations of this **Liability Policy,** nor may the terms, conditions and limitations hereunder be waived or changed, except by a written endorsement to this **Liability Policy** issued by the Company.

**T. ASSIGNMENT**

This **Liability Policy** may not be assigned or transferred, and any such attempted assignment or transfer is void and without effect unless the Company has provided its prior written consent to such assignment or transfer.

**U. REPRESENTATIONS**

By acceptance of the terms set forth in this **Liability Policy,** each **Insured** represents and agrees that the statements contained in the **Application,** which is deemed to be attached hereto, incorporated herein, and forming a part hereof, are said **Insured's** agreements and representations, that such representations are material to the Company's acceptance of this risk, that this **Liability Policy** is issued in reliance upon the truth of such representations, and embodies all agreements existing between said **Insured** and the Company or any of its agents.

If any statement or representation in the **Application** is untrue with respect to any **Liability Coverage,** such **Liability Coverage** is void and of no effect whatsoever, but only with respect to:

1. any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;

2. any **Insured Organization,** with respect to its indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and

3. any **Insured Organization,** if the person who signed the **Application** knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application,** or any other application completed for this **Liability Policy,** contained any such untrue statement or representation.

**V. LIBERALIZATION**

If, during the **Policy Period,** the Company is required, by law or by insurance supervisory authorities of the state in which this **Liability Policy** was issued, to make any changes in the form of this **Liability Policy,** by which the insurance afforded by this **Liability Policy** could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance will inure to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.

**W. AUTHORIZATION**

By acceptance of the terms herein, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the payment of premiums, the receiving of any return premiums that may become due hereunder, and the receiving of notices of cancellation, nonrenewal, or change of coverage, and the **Insureds** each agree that they have, individually and collectively, delegated such authority exclusively to the **Named Insured**; provided, that nothing herein will relieve the **Insureds** from giving any notice to the Company that is required under this **Liability Policy**.

**X. ENTIRE AGREEMENT**

The Declarations, the **Application**, the Liability Coverage Terms and Conditions, each **Liability Coverage**, and any endorsements attached thereto, constitute the entire agreement between the Company and the **Insured**.

**Y. HEADINGS**

The titles of the various paragraphs of this **Liability Policy** and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### NON-RESCISSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

The following replaces section *III. CONDITIONS*, **U. REPRESENTATIONS** of the Liability Coverage Terms and Conditions:

**U.     REPRESENTATIONS**

By acceptance of the terms set forth in this **Liability Policy**, each **Insured** represents and agrees that the statements contained in the **Application**, which is deemed to be attached hereto, incorporated herein, and forming a part hereof, are said **Insured's** agreements and representations, that such representations are material to the Company's acceptance of this risk, that this **Liability Policy** is issued in reliance upon the truth of such representations, and embodies all agreements existing between said **Insured** and the Company or any of its agents.

With respect to all the statements contained in the **Application,** no knowledge possessed by any one **Insured Person** will be imputed to any other **Insured Person.**

The Company will not, under any circumstance, rescind this **Liability Coverage** with respect to any **Insured**. However, the Company and the **Insureds** agree that if any statement or representation in the **Application** is untrue or inaccurate with respect to such **Liability Coverage**, then no coverage shall be afforded under such **Liability Coverage** for any **Claim** based upon, arising out of, or attributable to the subject matter of any such untrue or inaccurate statement or representation with respect to:

1.     any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;

2.     any **Insured Organization**, with respect to its indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and

3.     any **Insured Organization**, if the person who signed the **Application** knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application**, or any other application completed for this **Liability Policy**, contained any such untrue statement or representation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

LIA-10002 Ed. 06-10 Printed in U.S.A.
©2010 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GLOBAL COVERAGE COMPLIANCE ENDORSEMENT

This endorsement changes the following:

**Liability Coverage Terms and Conditions**

**It is agreed that:**

1. The following is added to section **II. DEFINITIONS**:

   **Financial Interest** means the **Named Insured's** insurable interest in an **Insured Organization** that is domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance, as a result of the **Named Insured's**:

   1. ownership of the majority of the outstanding securities or voting rights of such **Insured Organization** representing the present right to elect, appoint, or exercise a majority control over such **Insured Organization's** board of directors, board of trustees, board of managers, natural person general partner, or functional foreign equivalent;

   2. indemnification of, or representation that it has an obligation to indemnify, such **Insured Organization** for **Loss** incurred by such **Insured Organization**; or

   3. election or obligation to obtain insurance for such **Insured Organization**.

2. The following is added to section **III. CONDITIONS**:

   **SANCTIONS**

   This **Liability Policy** will provide coverage, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose the Company or any of its affiliated or parent companies to any trade or economic sanction under any law or regulation of the United States of America or any other applicable trade or economic sanction, prohibition, or restriction.

3. The following replaces section **III. CONDITIONS, A. TERRITORY**:

   **A. TERRITORY AND VALUATION**

   1. This **Liability Policy** applies anywhere in the world; provided, this **Liability Policy** does not apply to **Loss** incurred by an **Insured**, or a **Foreign Parent Corporation**, residing or domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance, to the extent that providing this insurance would violate the laws or regulations of such country or jurisdiction.

   2. In the event an **Insured Organization** incurs **Loss** referenced in 1. above to which this insurance would have applied, the Company will reimburse the **Named Insured** for its **Loss**, on account of its **Financial Interest** in such **Insured Organization**. As a condition precedent to such reimbursement, or any rights under this **Liability Policy**, the **Named Insured** will cause the **Insured Organization** or its **Insured Persons** to comply with the conditions of this **Liability Policy**.

   3. All premiums, Limits of Liability, Retention, **Loss**, and other amounts under this **Liability Policy** are expressed and payable in the currency of the United States. If a judgment is rendered, settlement is denominated, or another element of **Loss** under this **Liability Policy** is stated in a currency other than United States dollars, payment under this **Liability Policy** will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon, or any other element of **Loss** is due, respectively.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

LIA-19097 Ed. 03-15
© 2015 The Travelers Indemnity Company. All rights reserved.

4. The following is added to section **III. CONDITIONS, E. CLAIM DEFENSE**:

In the event of a **Claim** against an **Insured** or **Foreign Parent Corporation** that resides or is domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance and if Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend such **Claim** as set forth in this section III. CONDITIONS, E. CLAIM DEFENSE, 1. to the extent that doing so would not violate the laws or regulations of such country or jurisdiction.

If the Company is prohibited from defending such **Claim** or if Reimbursement coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, then this section III. CONDITIONS, E. CLAIM DEFENSE, 2. applies to such **Claim**; provided, any such **Claim** is subject to section III. CONDITIONS, P. ALLOCATION, 2.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

LIA-19097 Ed. 03-15
© 2015 The Travelers Indemnity Company. All rights reserved.

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

### AMEND CHANGE OF CONTROL AND EXTENDED REPORTING PERIOD CONDITIONS ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

1.  The following replaces the first paragraph of section **III. CONDITIONS, K. CHANGE OF CONTROL:**

    If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Loss** arising out of a **Claim** or that part of a **Claim** alleging **Wrongful Acts** committed before the **Change of Control**; coverage will cease with respect to **Loss** arising out of a **Claim** or that part of a **Claim** alleging **Wrongful Acts** committed after the **Change of Control**. After such **Change of Control**, the **Liability Policy** may not be canceled by the **Named Insured** and the entire premium for the **Liability Policy** will be deemed fully earned.

2.  The second and fifth paragraphs of section **III. CONDITIONS, K. CHANGE OF CONTROL** are amended by deleting "wholly."

3.  The first paragraph of section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** is amended by deleting "wholly."

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

LIA-19109 Ed. 04-15
© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF INSURED ORGANIZATION - DEBTOR IN POSSESSION ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

The following is added to section **II. DEFINITIONS, K. Insured Organization** of the Liability Coverage Terms and Conditions:

**Insured Organization** shall also mean a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

LIA-10250 Ed. 12-15
© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MISSISSIPPI CHANGES ENDORSEMENT

This endorsement changes the following:

**Liability Coverage Terms and Conditions**

**It is agreed that:**

1.  The following is added to subsection 1. of section **III. CONDITIONS, E. CLAIM DEFENSE:**

    The right to select defense counsel from the Company's list of counsel in a given area will be made jointly with the **Insured.**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

LIA-4014 Rev. 11-13
© 2012 The Travelers Indemnity Company. All rights reserved.


**TRAVELERS**

**Wrap+®**

*HEALTH CARE ORGANIZATION*
*DIRECTORS, OFFICERS AND TRUSTEES LIABILITY*

---

**THIS IS A CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.**
**PLEASE READ ALL TERMS CAREFULLY.**

## I.     INSURING AGREEMENTS

The Company shall pay on behalf of:

> A.     the **Insured Persons Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;
>
> B.     the **Insured Organization Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and
>
> C.     the **Insured Organization Loss** for **Wrongful Acts**;

resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

The Company shall pay on behalf of the **Insureds Loss** for any **Antitrust Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, subject to the amount set forth in ITEM 5 of the Declarations, as the Antitrust Claim Limit of Liability. The Company's maximum limit of liability for **Loss**, including **Defense Expenses**, for all **Antitrust Claims** shall be the amount set forth in ITEM 5 of the Declarations as the Antitrust Claim Limit of Liability, which shall be part of, and not in addition to, the **Liability Coverage Limit of Liability** for this **Liability Coverage**.

If ITEM 5 of the Declarations indicates that any of the following apply:

> a)     EMTALA Coverage for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") or any similar state or local statutes;
>
> b)     Excess Benefit Transaction Tax Coverage for **Excess Benefit Transaction Tax** involving any **Insured Organization** that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended;
>
> c)     HIPAA Violation Coverage for any **HIPAA Violation**; or
>
> d)     Internal Revenue Code Violation Coverage for any **Internal Revenue Code Violation**,

the Company shall pay on behalf of the **Insureds** taxes, fines, penalties and sanctions for each applicable Coverage described in a) through d) above, for which the **Insured** is legally obligated to pay as a result of a **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, subject to the amount set forth in ITEM 5 of the Declarations as the respective applicable Coverage Limit of Liability for each such Coverage described in a) through d) above. The Company's maximum limit of liability for all taxes, fines, penalties and sanctions for each Coverage described in a) through d) above shall be the amount set forth in ITEM 5 of the Declarations as the respective applicable Coverage Limit of Liability, which shall be part of, and not in addition to, the **Liability Coverage Limit of Liability** for this  **Liability Coverage**.

## II.     DEFINITIONS

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type shall have the meanings set forth in this Section II. DEFINITIONS:

A. **Antitrust Claim** means any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged violation of any law, rule or regulation relating to antitrust, the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts or practices in trade or commerce, including any actual or alleged violation of the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act, the Hart-Scott Rodino Antitrust Improvements Act or any rule or regulation promulgated thereunder.

B. **Claim** means:

   1. a written demand for monetary or non-monetary relief;

   2. a civil proceeding commenced by service of a complaint or similar pleading;

   3. a criminal proceeding commenced by a filing of charges;

   4. a formal administrative or regulatory proceeding, commenced by a filing of charges, formal investigative order, service of summons or similar document;

   5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

   6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

   against an **Insured** for a **Wrongful Act**, provided that **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, or any proceeding against an individual member of the **Health Care Staff** brought by or before any **Governmental Entity**, which is related to the medical license of such individual staff member.

   A **Claim** shall be deemed to be made on the earliest date such written notice is received by an **Executive Officer**.

C. **Credentialing** means the process of reviewing a **Health Care Staff** member's or prospective member's credentials, training, demonstrated practical experience, license verification, malpractice history or insurance, in order to determine such member or prospective member's qualification for the granting or renewal of **Health Care Staff** membership or privileges.

D. **Disqualified Person** means a "disqualified person" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

E. **Employee** means a natural person whose labor or service is engaged by and directed by the **Insured Organization** and:

   1. who is on the payroll of the **Insured Organization**, including:

      a. any in-house general counsel of the **Insured Organization**; and

      b. any other full-time, part-time, temporary and seasonal workers;

   2. who is a volunteer; or

   3. whose services have been leased by the **Insured Organization**.

   **Independent Contractors** are not **Employees**. The status of an individual as an **Employee** shall be determined as of the date of the alleged **Wrongful Act**.

F. **Excess Benefit Transaction** means an "excess benefit transaction" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

© 2008 The Travelers Indemnity Company All Rights Reserved

G.   **Excess Benefit Transaction Tax** means any excise tax imposed by the Internal Revenue Service on an **Insured Person** who is an **Organizational Manager** as a result of such **Insured Person's** participation in an **Excess Benefit Transaction.**

H.   **Executive Officer** means the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, chief compliance officer, executive director, **LLC Manager**, human resources manager, or an individual acting in the capacity of a human resources manager, or managing director of the **Insured Organization** or a functional equivalent thereof.

I.   **Governmental Entity** means the United States of America or any federal, state or local governmental, regulatory or administrative agency or entity.

J.   **Health Care Services** means health care or treatment, including medical, surgical, psychiatric, dental, ophthalmologic, optometric, podiatric, holistic, nursing, chiropractic, diagnostic imaging, or other professional health care or treatment of any natural person; counseling or other social services in connection with such health care or treatment; furnishing or dispensing of medications, drugs, blood, blood products, tissue, or medical, surgical, psychiatric, dental, ophthalmologic, optometric, podiatric, or chiropractic equipment, supplies or appliances; or the handling of, or the performance of, post-mortem procedures on, human bodies including autopsies and the harvesting of organs.

K.   **Health Care Staff** means physicians including resident physicians, medical directors, nurses, and other professional  health care practitioners providing **Health Care Services** on behalf of the **Insured Organization.**

L.   **HIPAA Violation** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by an **Insured** in violation of Title II of the Health Insurance Portability and Accountability Act of 1996, amendments to such law, or regulations promulgated under such law concerning privacy of health information.

M.   **Independent Contractor** means any natural person independent contractor, who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Insured Organization**.  The status of an individual as an **Independent Contractor**  shall be determined as of the date of the alleged **Wrongful Act.**

N.   **Insured** means the **Insured Persons** and the **Insured Organization.**

O.   **Insured Organization** means the **Named Insured** and any **Subsidiary.**

P.   **Insured Person** means:

   1.   any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, **LLC Manager**, member of the board of trustees, member of the board of regents, member of the board of governors, or a functional equivalent thereof, **Executive Officer, Employee**, or member of a duly constituted committee of the **Insured Organization**;

   2.   any employee of an independent management organization acting as an officer or as the administrator of the **Insured Organization** pursuant to a written contractual agreement with the **Insured Organization** and solely while performing his or her duties in such capacity as specified by such contract; or

   3.   **any Independent Contractor**, but only while acting in his or her capacity as such, and only if the **Insured Organization** actually indemnifies such **Independent Contractor** for liability arising out of any **Claim.**

   In the event of the death, incapacity or bankruptcy of an  **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person.**

Q.   **Internal Revenue Code Violation** means any actual or alleged violation of any of the following sections of the Internal Revenue Code of 1986, as amended, involving any **Insured Organization** that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended:

Section 4911 (Taxes on Excess Expenditures to Influence Legislation);
Section 4941 (a) and (b) (Taxes on Self-Dealing);
Section 4942 (Taxes on Failure to Distribute Income);
Section 4943 (Taxes on Excess Business Holdings);
Section 4944 (Taxes on Investments which Jeopardize Charitable Purpose);
Section 4945 (Taxes on Taxable Expenditures);
Section 6652 (c) (1) (A)(B) (Penalties for Failure to File Certain Information Returns or Registration Statements);
Section 6655 (a)(1) (Penalties for Failure to Pay Estimated Income Taxes); or
Section 6656(a) and (b) (Penalties for Failure to Make Deposit of Taxes).

R.   **Loss** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including: settlements; judgments; compensatory damages; punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages; prejudgment and postjudgment interest; and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** does not include:

1.   civil or criminal fines; penalties or sanctions; the multiplied portion of any multiplied damage award; liquidated damages; or damages, penalties or types of relief deemed uninsurable under applicable law; provided that this subpart 1. shall not apply to any EMTALA Coverage, Excess Benefit Transaction Tax Coverage, HIPAA Violation Coverage or Internal Revenue Code Violation Coverage identified as applicable in ITEM 5 of the Declarations;

2.   any tax assessed for failure to correct an **Excess Benefit Transaction** assessed against any **Disqualified Person** or any other tax; provided that this subpart 2. shall not apply to any Excess Benefit Transaction Tax Coverage or Internal Revenue Code Violation Coverage identified as applicable in ITEM 5 of the Declarations; or

3.   any amount allocated to non-covered loss pursuant to Section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

S.   **Organization Manager** means an "organization manager" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

T.   **Outside Entity** means a corporation or organization:

1.   other than the **Insured Organization**, which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended; or

2.   specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.

U.   **Outside Position** means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors or a functional equivalent thereof, with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

V.   **Peer Review** means **Credentialing** through:

1.   formally adopted written procedures, or

2.   any duly authorized review of quality and cost of **Health Care Services**,

of members of the **Health Care Staff** by a professional review board or designated committee of the **Insured Organization**.

W.   **Regulatory Action Wrongful Act** means:

    1.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in performing or failing to perform any billing (including calculation of payments under any managed care plan), procedure coding, or any submission of any claim, data or report with respect to Medicare or Medicaid under the Social Security Act, as amended, or any similar federal, state or local program; or

    2.    any offer, acceptance, payment or credit by an **Insured**:

        a.    in exchange for any patient or other business referral(s) in violation of any federal, state or local law; or

        b.    in violation of any anti-kickback, self-referral or health care fraud and abuse law, or any similar or related federal, state or local law or regulation.

X.   **Subsidiary** means:

    1.    any corporation, partnership or any limited liability company organized under the laws of any state, in which, on or prior to the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint such entity's board of directors, board of trustees, board of managers, or a functional equivalent thereof, or in cases where no such securities have been issued, the ability to control or direct such entity's managerial decisions;

    2.    any corporation, partnership or limited liability company operated as a joint venture, and which is scheduled by endorsement to this **Liability Policy**, in which, on or prior to the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such entity, the **Named Insured** solely controls the management and operation of such entity; or

    3.    subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** forms or acquires during the **Policy Period** in which the **Named Insured** owns, directly or through one or more **Subsidiaries** more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint such entity's board of directors, board of trustees, board of managers or a functional equivalent thereof, or to exercise a majority control of the board of directors, board of trustees, board of managers or a functional equivalent thereof.

Y.   **Wrongful Act** means:

    1.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against an **Insured Person** in his or her capacity as such;

    2.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against an **Insured Person** in his or her **Outside Position**; or

    3.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against the **Insured Organization.**

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** shall be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period.**

| *III.* | **EXCLUSIONS** |
|---|---|

A.    **This Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

1.    for any actual or alleged damage to, or destruction of, loss of, or loss of use of, any tangible property including without limitation inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot;

2.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion shall not apply to a) allegations of emotional distress, mental anguish, humiliation, or loss of reputation if and only to the extent that such allegations are made by a current, former or prospective member of the **Health Care Staff** as part of a **Claim** relating to **Peer Review** or **Credentialing** activities, or b) invasion of privacy arising out of, or in any way relating to a **HIPAA Violation**;

3.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance, or the hazardous properties of nuclear material, including infectious nuclear waste or nuclear medical waste;

4.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Pollution**; provided that this exclusion shall not apply to any **Claim** to which Insuring Agreement A. solely applies;

5.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**;

6.    for or arising out of facts, transactions or events which are or reasonably would be regarded as a **Wrongful Act**, about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**;

7.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct or indirect renewal or replacement;

8.    for any actual or alleged violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee** or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA;

9.    for any actual or alleged violation of responsibilities, duties or obligations under any law concerning social security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation, or for any actual or alleged violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the National Labor Relations Act (NLRA), Fair Labor Standards Act (FLSA) (except the Equal Pay Act), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation;

10.     by or on behalf of, or in the name or right of, any **Insured**; provided that this exclusion shall not apply to:

    a.     any **Claim** brought by a receiver, liquidator, bankruptcy trustee or similar official of the **Insured Organization**;

    b.     any **Claim** brought by any current, former or prospective member of the **Health Care Staff** with respect to **Peer Review** or **Credentialing** activities;

    c.     any **Claim** in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** and which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this **Liability Coverage**;

    d.     any **Claim** brought or maintained by a natural person who was a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof, but who has not served in such capacity for at least four (4) years preceding the date the **Claim** is first made; and who brings and maintains the **Claim** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or functional equivalent thereof or anyone who has served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made; or

11.     based upon, alleging, arising out of, or in any way relating to, directly or indirectly:

    a.     the offer, sale, solicitation or distribution of securities issued by the **Insured Organization**; or

    b.     the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

    provided that this exclusion will not apply to any tax exempt debt offering;

12.     by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Position** with respect to such **Outside Entity**;

13.     based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any **Wrongful Act by a Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary**;

14.     for any actual or alleged liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement;

15.     based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged liability of any **Insured** under any express contract or agreement; provided that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement, and that, for the purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making;

16.     based upon, alleging, arising out of, or in any way relating to, directly or indirectly any employment related **Wrongful Act**;

17.     based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged **Regulatory Action Wrongful Act**;

18.     with respect to Insuring Agreement C. only, for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade secret or any other intellectual property rights.

B.    The Company shall have no duty to pay **Loss**, other than **Defense Expenses** for any **Claim**:

    1.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any **Insured**:

        a.    committing any intentionally dishonest or fraudulent act or omission;

        b.    committing any willful violation of any statute, rule or law; or

        c.    gaining in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled

    provided that this Exclusion B.1(a) and (b) shall not apply unless a judgment or other final adjudication establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, or willful violation of any statute, rule or law; or

    2.    seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

## IV.    SEVERABILITY OF EXCLUSIONS

No conduct of any **Insured Person** shall be imputed to any other **Insured Person** to determine the application of any of the Exclusions set forth in Section III. EXCLUSIONS above. Solely with respect to Exclusion B. 1. set forth above, only the conduct of or knowledge possessed by any **Executive Officer** shall be imputed to the **Insured Organization** to determine if coverage is available.

## V.    CONDITIONS

A.    SETTLEMENT

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** shall refuse to consent to such Settlement Offer, the **Insured** shall be solely responsible for thirty percent (30%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** shall also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** shall not exceed the remaining applicable limit of liability.

B.    COINSURANCE

Solely with regard to any **Loss** resulting from any **Antitrust Claim** other than under Insuring Agreement A, the **Insured** shall bear uninsured and at its own risk:

    a.    the retention amount set forth in ITEM 5 of the Declarations as the Antitrust Claim Retention; and

    b.    the percentage of **Loss** set forth in ITEM 5 of the Declarations as the Antitrust Claim Coinsurance Percentage that is excess of the applicable Antitrust Claim Retention.

C.    PRESUMPTION OF INDEMNIFICATION

Regardless of whether **Loss** resulting from any **Claim** against **Insured Persons** is actually indemnified, Insuring Agreement B. and the Retention set forth in the Declarations shall apply to any **Loss** as to which indemnification by the **Insured Organization** or any **Outside Entity** is legally permissible, whether or not actual indemnification is made, unless such indemnification is not made by the **Insured Organization** or such **Outside Entity** solely by reason of its **Financial Insolvency**.

The certificate of incorporation, charter, articles of association or other organizational documents of the **Insured Organization** and each **Outside Entity**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

D.    OTHER INSURANCE AND INDEMNIFICATION

This **Liability Coverage** shall apply only as excess insurance over, and shall not contribute with: (1) any other valid and collectible insurance available to any **Insured**, including but not limited to any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; (2) any self-insurance or self-insurance program of the **Insured**, or any self-insured retention obligation assumed by the **Insured** under any valid insurance, including but not limited to any healthcare professional liability insurance, any comprehensive general liability insurance, or any comprehensive healthcare liability insurance; or (3) indemnification to which any **Insured Person** is entitled from any **Outside Entity**. This **Liability Coverage** will not be subject to the terms of any other insurance.

E.    OUTSIDE POSITIONS – LIMIT OF LIABILITY

If any **Claim** against the **Insureds** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Expenses**, for such **Claim** shall not exceed the largest single available limit of liability under any such coverage.

F.    ORDER OF PAYMENTS

If **Loss** from any **Claim** exceeds the remaining applicable limit of liability as set forth in ITEM 5 of the Declarations:

1.    the Company will first pay **Loss** for such **Claim** to which Insuring Agreement A. applies; then

2.    to the extent that any amount of the applicable limit of liability shall remain available, the Company shall pay **Loss** for such **Claim** to which Insuring Agreements B. and C. apply.

Upon written request of the **Insured Organization** by and through any **Executive Officer**, the Company shall either pay or withhold payment of **Loss** from such **Claim** under Insuring Agreements B. and C., as applicable. In the event of a written request to withhold payment, the Company shall make any future payment only for **Loss** from any such **Claim** to which Insuring Agreement A. applies, unless otherwise so instructed upon written request by and through an **Executive Officer** of the **Insured Organization**.

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
| --- |

## MANAGED CARE PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1.    The following are added to section **II. DEFINITIONS:**

    *Handling and Adjusting Health Care Claims* means the handling or adjusting of any claim for benefits or coverage, including any: credit or investigatory activities; rescission or cancellation; or subrogation activities, in connection with the handling or adjusting of any claim for benefits or coverage.

    *Managed Care Professional Services* means the following services or activities in connection with any health care plan, workers compensation plan or indemnity health care insurance contract:

    a.    administrative or management services; establishing health care provider networks, including tiered networks; providing information with respect to tiered networks or consumer directed health care plans, including cost and quality information regarding specific providers; providing quality assurance or quality assurance review of **Health Care Services**; case management; wellness or health promotional education; development or implementation of clinical guidelines, practice parameters or protocols; or triage for payment of **Health Care Services**;

    b.    **Utilization Review**;

    c.    **Handling and Adjusting Health Care Claims**;

    d.    **Marketing of Health Care Services**; or

    e.    any actuarial review, opinion or determination of loss reserves or pricing adequacy.

    *Marketing of Health Care Services* means any advertising, marketing, selling or enrollment activity for any health care plan, workers' compensation plan or indemnity health care insurance contract; or any conduct of any **Insured** acting in their capacity as an insurance agent or insurance broker.

    *Utilization Review* means the process of evaluating the appropriateness, necessity or cost of **Health Care Services** for the purpose of determining whether payment or coverage for such **Health Care Services** will be authorized or paid under any health insurance plan, including any prospective review to authorize treatment or expenses, concurrent review to assess continued patient care, and retrospective review to assess **Health Care Services** already rendered.

2.    The following is added to section **III. EXCLUSIONS, A.:**

    The **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

        based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged providing, rendering or performing, or failing to provide, render or perform any **Managed Care Professional Services**;

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-7010 Ed. 01-08
© 2008 The Travelers Indemnity Company. All rights reserved.

based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged failure or omission of any **Insured** to effect or maintain, including adequate coverage or limits, stop loss or provider excess insurance, reinsurance or self-insurance in connection with any health care plan, workers' compensation plan or indemnity health care insurance contract; or

for any actual or alleged **Peer Review** in connection with **Managed Care Professional Services**.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

HCD-7010 Ed. 01-08                                                                 Page 2 of 2

© 2008 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## HEALTH CARE SERVICES EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following is added to section **III. EXCLUSIONS**, A.:

This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

> based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged act, error, omission, misstatement, misleading statement or neglect of any **Insured** in the rendering of or failure to render any **Health Care Services**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-7011 Ed. 01-08                                                                                    Page 1 of 1
© 2008 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following is added to section **III. EXCLUSIONS, A.:**

This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

   based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged act, error, omission, misstatement, misleading statement or neglect of any **Insured** in the rendering of, or failure to render, any professional services for any third party.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-7015 Ed. 01-08
© 2008 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULED PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following is added to section **III. EXCLUSIONS, A.:**

This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim:**

> for any actual or alleged act, error, omission, misstatement, misleading statement or neglect of any **Insured** in the rendering of, or failure to render, any professional services in connection with the businesses of the **Insured Organization** scheduled below:
>
> **Business**
> Ambulance Service

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-7028 Ed. 11-08                                                                                        Page 1 of 1
© 2008 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND POLLUTION EXCLUSION WITH SIDE A EXCEPTION
## (SOLELY REMOVED) ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following replaces section *III. EXCLUSIONS*, A. 4. of the **Liability Coverage**:

4.    a.    based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

        b.    based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or

        c.    brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**,

    provided that this exclusion shall not apply to any **Claim** to which Insuring Agreement A. applies;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-10009 Ed.02-11
© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND SEVERABILITY OF EXCLUSIONS
## FOR SPECIFIC POSITIONS ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following replaces section **IV. SEVERABILITY OF EXCLUSIONS.**:

**IV.     SEVERABILITY OF EXCLUSIONS**

No conduct of any **Insured Person** shall be imputed to any other **Insured Person** to determine the application of any of the Exclusions set forth in Section III. EXCLUSIONS above.  Solely with respect to Exclusion B. 1. set forth above, only the conduct of or knowledge possessed by the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, or chief compliance officer of the **Insured Organization** or a functional equivalent thereof shall be imputed to the **Insured Organization** to determine if coverage is available.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

© 2015 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### AMEND INSURED V. INSURED EXCLUSION
### WITH CARVEBACK FOR SECURITY HOLDER DERIVATIVE CLAIM
### OR SECURITY HOLDER DERIVATIVE DEMAND ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1.  The following are added to section **II. DEFINITIONS**:

    *Security Holder Derivative Claim* means any **Claim** brought on behalf of, or in the name or right of, the **Insured Organization** by one or more security holders of the **Insured Organization** in their capacity(ies) as such, but only if such **Claim** is brought and maintained without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

    *Security Holder Derivative Demand* means a written demand by one or more security holders of the **Insured Organization** in their capacity(ies) as such to bring a civil proceeding in a court of law on behalf of, or in the name or right of, the **Insured Organization** against any **Insured Person** for a **Wrongful Act** by an **Insured Person**, but only if such demand is asserted without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

2.  The following is added section **III. EXCLUSIONS**, A.10.:

    any **Security Holder Derivative Claim** or any **Security Holder Derivative Demand**;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### AMEND INSURED V. INSURED EXCLUSION WITH CARVEBACK FOR WHISTLEBLOWER ACTIVITY ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1.  The following is added to section **II. DEFINITIONS**:

    ***Whistleblower Activity*** means activity protected under any whistleblower protection provision of any applicable federal, state or local law that affords protection to a natural person, other than the filing of a proceeding, causing a proceeding to be filed or any other activity that is engaged in on a voluntary basis.

2.  The following is added section **III. EXCLUSIONS, A.10.**:

    any **Whistleblower Activity**;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-19003 Ed. 01-15
© 2015 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUPPLEMENTAL PERSONAL INDEMNIFICATION COVERAGE ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1. The following is added to ITEM 5 of the Declarations:

   **Supplemental Personal**
   **Indemnification**
   **Limit of Liability:**          $500,000  for all **Claims**

2. The following is added to section I. **INSURING AGREEMENTS**:

   If the **Liability Coverage Limit of Liability** under this **Liability Coverage** or a **Liability Coverage Shared Limit of Liability**, if applicable, has been exhausted, the Company shall provide the **Insured Persons** with an additional Supplemental Personal Indemnification Limit of Liability under Insuring Agreement A. Such Supplemental Personal Indemnification Limit of Liability shall not exceed the amount set forth in ITEM 5 of the Declarations, which amount is in addition to and not part of the **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable.   This Supplemental Personal Indemnification Limit of Liability applies solely to **Loss** resulting from any **Claim**, other than a **Claim** for an employment-related **Wrongful Act,** against an **Insured Person** to which Insuring Agreement A. is applicable.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company:  Travelers Casualty and Surety Company of America
Policy Number:     106552379

HCD-19007 Ed. 01-15                                                                                                        Page 1 of 1
© 2015 The Travelers Indemnity Company. All rights reserved.

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|

**AMEND EXCLUSION B.1. - FINAL ADJUDICATION WORDING ENDORSEMENT**

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

The following replaces section **III. EXCLUSIONS, B., 1.**:

    1.    based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any **Insured**:

        a.    committing any intentionally dishonest or fraudulent act or omission;

        b.    committing any willful violation of any statute, rule or law; or

        c.    gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled,

provided that this Exclusion B.1 shall not apply unless a final adjudication establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, or willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such **Insured** was not legally entitled; or

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADD PROFESSIONAL SERVICES EXCLUSION
## WITH MANAGEMENT EXCEPTION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1.     The following is added to section **III. EXCLUSIONS, A.:**

This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged act, error, omission, misstatement, misleading statement or neglect of any **Insured** in the rendering of, or failure to render, any professional services for any third party; provided that this exclusion shall not apply to any **Claim** alleging a **Wrongful Act** in the management or supervision of any **Insured** performing professional services for any third party.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCD-9005 Ed. 08-10
© 2010 The Travelers Indemnity Company.  All rights reserved.

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
| --- |

## HIPAA VIOLATION ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Directors, Officers and Trustees Liability**

**It is agreed that:**

1. The following is added to section **III. CONDITIONS, C. LIMITS OF LIABILITY, 1.**, of the Liability Terms and Conditions:

   The Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under the Health Care Organization Directors, Officers and Trustees Liability coverage for any civil **HIPAA Violation** by an **Insured**, will not exceed the HIPAA Violation Coverage Limit of Liability set forth in ITEM 5 of the Declarations.

2. The following is added to section **III. CONDITIONS, D. ADDITIONAL DEFENSE COVERAGE**, of the Liability Coverage Terms and Conditions:

   Provided however the **Additional Defense Limit of Liability** does not apply to **Claims** under the Health Care Organization Directors, Officers and Trustees Liability coverage for any **HIPAA Violation** by an **Insured**.

3. The following replaces the third paragraph of section **I. Insuring Agreements**, of the **Liability Coverage**:

   If ITEM 5 of the Declarations indicates that any of the following apply:

   a) EMTALA Coverage for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") or any similar state or local statutes;

   b) Excess Benefit Transaction Tax Coverage for **Excess Benefit Transaction Tax** involving any **Insured Organization** that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended;

   c) HIPAA Violation Coverage for any **HIPAA Violation**; or

   d) Internal Revenue Code Violation Coverage for any **Internal Revenue Code Violation**,

   the Company shall pay on behalf of the **Insureds** taxes, fines, penalties and sanctions for each applicable Coverage described in a), b) and d) above, and taxes, civil fines, penalties or sanctions for the Coverage described in c) above, if applicable, for which the **Insured** is legally obligated to pay as a result of a **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, subject to the amount set forth in ITEM 5 of the Declarations as the respective applicable Coverage Limit of Liability for each such Coverage described in a) through d) above. The Company's maximum limit of liability for all taxes, fines, penalties and sanctions for each Coverage described in a) through d) above shall be the amount set forth in ITEM 5 of the Declarations as the respective applicable Coverage Limit of Liability, which shall be part of, and not in addition to, the **Liability Coverage Limit of Liability** for this **Liability Coverage**. The payment of taxes, civil fines, penalties or sanctions for **HIPAA Violations** are not subject to any Retention.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

HCD-19012 Ed. 01-15
© 2015 The Travelers Indemnity Company. All rights reserved.

Page 1 of 2

4.     The following replaces section **II. DEFINITIONS, R. 1.**, of the **Liability Coverage**:

    **R.1.**   civil or criminal fines; penalties or sanctions; the multiplied portion of any multiplied damage award; liquidated damages; or damages, penalties or types of relief deemed uninsurable under applicable law; provided that:

        a.   This subpart 1. shall not apply to any EMTALA Coverage, Excess Benefit Transaction Tax Coverage, Internal Revenue Code Violation Coverage; and

        b.   Solely with respect HIPAA Violation Coverage **Loss** shall include civil fines; penalties or sanctions if such coverage is

        identified as applicable in ITEM 5 of the Declarations;

5.     The following replaces section **III. EXCLUSIONS, A. 2.**, of **Liability Coverage**:

    2.   based upon alleging arising out of, or in any way relating to, directly or indirectly any actual or alleged bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion shall not apply to allegations of emotional distress, mental anguish, humiliation, or loss of reputation if and only to the extent that such allegation are made by a current, former or prospective member of the **Health Care Staff** as part of a **Claim** relating to **Peer Review or Credentialing** activities.

6.     The following is added to section **III. EXCLUSIONS, A.** of the **Liability Coverage**:

    This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expense** for, any **Claim**:

        based upon, alleging, arising out of, or in any way relating to, directly or indirectly any failure to prevent unauthorized access to, or use of, electronic or non-electronic data containing:

        a.   information concerning any natural person that constitutes "nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to such Act;

        b.   any private personal information concerning any natural person that is protected under any local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance, common or other law, for any **Claim** subject to such act, statute, rule, regulation, requirement, ordinance, common or other law; or

        c.   a natural person's driver's license or state identification number; social security number; unpublished telephone number; credit, debit, or charge card numbers, or other financial account numbers and associated security codes, access codes, passwords or PIN numbers associated with such credit, debit, or charge card numbers, or other financial account numbers;

        provided that this exclusion shall not apply to medical or health care information concerning a natural person, including "protected health information" as defined in Title II of the Health Insurance Portability and Accountability Act of 1996, amendments to such law, or regulations promulgated under such law concerning privacy of health information.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

© 2015 The Travelers Indemnity Company. All rights reserved.

 **TRAVELERS**

**Wrap+®**

*HEALTH CARE ORGANIZATION*
*EMPLOYMENT PRACTICES LIABILITY*

*THIS IS A CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.*
*PLEASE READ ALL TERMS CAREFULLY.*

## I.    INSURING AGREEMENTS

A.    The Company shall pay on behalf of the **Insured** **Loss** for any **Employment Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Employment Practice**.

B.    If ITEM 5 of the Declarations indicates that Third Party Wrongful Act Coverage has been purchased, the Company shall pay on behalf of the **Insured** **Loss** for any **Third Party Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Third Party Wrongful Act**.

## II.    DEFINITIONS

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type shall have the meanings set forth in this Section II. DEFINITIONS:

A.    **Claim** means an **Employment Claim** or, if Third Party Wrongful Act Coverage is purchased, a **Third Party Claim**.

A **Claim** shall be deemed to be made on the earliest date such written notice is received by an **Executive Officer**.

B.    **Claimant** means:

1.    a past, present or future **Employee** of, or applicant for employment with, the **Insured Organization**;

2.    a **Governmental Entity** or agency, including but not limited to the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of a past, present or future **Employee** or applicant for employment; or

3.    any **Independent Contractor**.

C.    **Credentialing** means the process of reviewing a **Health Care Staff** member's or prospective member's credentials, including training, demonstrated practical experience, license verification, malpractice history or insurance, in order to determine such member's or prospective member's qualification for the granting or renewal of **Health Care Staff** membership or privileges.

D.    **Discrimination** means any actual or alleged:

1.    violation of any employment discrimination law; or

2.    disparate treatment of, or the failure or refusal to hire a **Claimant** or **Outside Claimant** because he or she is or claims to be a member of a class which is or is alleged to be legally protected.

E.    **Employee** means a natural person whose labor or service is engaged by and directed by the **Insured Organization** and:

HCE-3001 Ed. 01-08
© 2008 The Travelers Indemnity Company All Rights Reserved

      1.      who is on the payroll of the **Insured Organization**, including:

          a.      any in-house general counsel of the **Insured Organization**; and

          b.      any other full-time, part-time, temporary and seasonal workers;

      2.      who is a volunteer; or

      3.      whose services have been leased by the **Insured Organization**.

**Independent Contractors** are not **Employees**. The status of an individual as an **Employee** shall be determined as of the date of the alleged **Wrongful Act**.

F.     *Employment Agreement* means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

G.     *Employment Claim* means:

      1.      a written demand for monetary damages or non-monetary relief;

      2.      a civil proceeding commenced by service of a complaint or similar pleading;

      3.      a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary or non-monetary relief;

      4.      an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

      5.      a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an **Insured** by or on behalf of or for the benefit of a **Claimant**, or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant**, for a **Wrongful Employment Practice**; provided that **Employment Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, any type of criminal proceeding, or any **Peer Review** activities.

H.     *Executive Officer* means the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, chief compliance officer, executive director, **LLC Manager**, human resources manager, or an individual acting in the capacity of a human resources manager, or managing director of the **Insured Organization** or a functional equivalent thereof.

I.     *Governmental Entity* means the United States of America or any federal, state or local governmental, regulatory or administrative agency or entity.

J.     *Health Care Services* means health care or treatment, including medical, surgical, psychiatric, dental, ophthalmologic, optometric, podiatric, holistic, nursing, chiropractic, diagnostic imaging, or other professional health care or treatment of any natural person; counseling or other social services in connection with such health care or treatment; furnishing or dispensing of medications, drugs, blood, blood products, tissue, or medical, surgical, psychiatric, dental, ophthalmologic, optometric, podiatric, or chiropractic equipment, supplies or appliances; or the handling of, or the performance of, post-mortem procedures on, human bodies including autopsies and the harvesting or organs.

K.  **Health Care Staff** means physicians including resident physicians, medical directors, nurses, and other healthcare practitioners providing **Health Care Services** on behalf of the **Insured Organization**, but only for a **Claim** where such **Health Care Staff** member is actually indemnified by the **Insured Organization**.

L.  **Independent Contractor** means any natural person independent contractor who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Insured Organization**. The status of an individual as an **Independent Contractor** shall be determined as of the date of the alleged **Wrongful Act**.

M.  **Insured** means the **Insured Persons** and the **Insured Organization**.

N.  **Insured Organization** means the **Named Insured** and any **Subsidiary**.

O.  **Insured Person** means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of regents, member of the board of governors, natural person partner, **LLC Manager** or a functional equivalent thereof of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, or while serving in an **Outside Position**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

P.  **Loss** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant** or **Outside Claimant** awarded pursuant to a court order or judgment. **Loss** does not include:

   1.  civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

   2.  future compensation, including salary or benefits, for a **Claimant** or **Outside Claimant** who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a **Claim**; or that part of any judgment or settlement which constitutes front pay, future monetary losses including but not limited to pension and other benefits, or other future economic relief or the value or equivalent thereof, if the Insured has been ordered, or has the option pursuant to a judgment, order or other award or disposition of a **Claim**, to promote, accommodate, reinstate, or hire the **Claimant** or **Outside Claimant** to whom such sums are to be paid, but fails to do so;

   3.  medical, pension, disability, life insurance, stock options or other similar employee benefits, except and to the extent that a judgment or settlement of a **Claim** includes a monetary component measured by the value of pension, medical, disability, life insurance, stock options or other similar employee benefits, as consequential damages for a **Wrongful Act**; or

   4.  any amount allocated to non-covered loss pursuant to Section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

Q.  **Outside Claimant** means:

   1.  a past, present or future **Outside Employee** of, or applicant for employment with, an **Outside Entity**;

   2.  a **Governmental Entity** or agency, including but not limited to the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of, or for the benefit of, present or former **Outside Employees** or applicants for employment; or

      3.    any natural person independent contractor who performs labor or service solely for the **Outside Entity** on a full-time basis pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Outside Entity**.

R.    *Outside Employee* means a natural person whose labor or service is engaged by and directed by an **Outside Entity** and:

    1.    who is on the payroll of an **Outside Entity**, including:

        a.    any in-house general counsel of the **Outside Entity**; and

        b.    any other full-time, part-time, temporary and seasonal workers;

    2.    who is a volunteer; or

    3.    whose services have been leased by the **Outside Entity**.

The status of an individual as an **Outside Employee** shall be determined as of the date of the alleged **Wrongful Employment Practice**.

S.    *Outside Entity* means a corporation or organization:

    1.    other than the **Insured Organization**, which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended; or

    2.    specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.

T.    *Outside Position* means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors or a functional equivalent thereof with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

U.    *Peer Review* means **Credentialing**:

    1.    formally adopted written procedures, or

    2.    any duly authorized review of quality and cost of **Health Care Services**,

of members of the **Health Care Staff** by a professional review board or designated committee of the **Insured Organization**.

V.    *Retaliation* means any actual or alleged **Wrongful Termination** or other adverse employment action against a **Employee** or **Outside Employee** on account of such **Employee's** or **Outside Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any **Governmental Entity** alleged violations of the law, or on account of the **Employee** or **Outside Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

W.    *Sexual Harassment* means any actual or alleged unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature:

    1.    which is made a term or condition of a **Claimant's** or **Outside Claimant's** employment or advancement;

    2.    which the submission to, or rejection of, is used as a basis for decisions affecting the **Claimant** or **Outside Claimant**; or

    3.    which has the purpose or effect of creating an intimidating, hostile or offensive work environment.

X.   **Subsidiary** means:

1.   any corporation, partnership or any limited liability company organized under the laws of any state, in which, on or prior to the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint such entity's board of directors, board of trustees, board of managers or a functional equivalent thereof, or in cases where no such securities have been issued, the ability to control or direct such entity's managerial decisions;

2.   any corporation, partnership or limited liability company operated as a joint venture, and which is scheduled by endorsement to this **Liability Policy**, in which, on or prior to the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such entity, the **Named Insured** solely controls the management and operation of such entity; or

3.   subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** forms or acquires during the **Policy Period** in which the **Named Insured** owns, directly or through one or more **Subsidiaries** more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint such entity's board of directors, board of trustees, board of managers or a functional equivalent thereof, or to exercise a majority control of the board of directors, board of trustees, board of managers or a functional equivalent thereof.

Y.   **Third Party Claim** means:

1.   a written demand for monetary or non-monetary relief;

2.   a civil proceeding commenced by service of a complaint or similar pleading;

3.   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons, or similar document;

4.   an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

5.   a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an **Insured** by or on behalf of or for the benefit of any natural person other than a **Claimant** for a **Third Party Wrongful Act**; provided that **Third Party Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, any type of criminal proceeding, or any **Peer Review** activities.

Z.   **Third Party Wrongful Act** means, with respect to any natural person other than a **Claimant**, any actual or alleged:

1.   disparate treatment in violation of any discrimination law or because he or she is or claims to be a member of a class which is or is alleged to be legally-protected; or

2.   unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature which violates the civil rights of any such person,

committed or attempted by any **Insured**.

AA. **Workplace Harassment** means any actual or alleged harassment, other than **Sexual Harassment**, which creates a work environment that interferes with job performance, or creates an intimidating, hostile, or offensive work environment.

BB. **Wrongful Act** means:

1. a **Wrongful Employment Practice** occurring in the course of or arising out of a **Claimant's** employment, application for employment or performance of services with the **Insured Organization**;

2. a **Wrongful Employment Practice** by an **Insured Person** in his or her **Outside Position** occurring in the course of or arising out of an **Outside Claimant's** employment, application for employment or performance of services with an **Outside Entity**; or

3. a **Third Party Wrongful Act**, if ITEM 5 of the Declarations indicates that Third Party Wrongful Acts Coverage has been purchased.

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** shall be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period.**

CC. **Wrongful Employment Practice** means any actual or alleged:

1. **Discrimination;**

2. **Retaliation;**

3. **Sexual Harassment;**

4. **Workplace Harassment;**

5. **Wrongful Termination;**

6. breach of **Employment Agreement;**

7. violation of the Family Medical Leave Act;

8. employment-related misrepresentation;

9. defamation, including libel or slander, or invasion of privacy;

10. failure to create or enforce adequate workplace or employment policies and procedures, employ or promote, or grant tenure;

11. wrongful discipline, denial of training, deprivation of career opportunity, denial or deprivation of seniority, or evaluation; and

12. negligent hiring, supervision of others, training, or retention, but only if such act is alleged in connection with a **Wrongful Employment Practice** set forth in 1. through 11. above.

DD. **Wrongful Termination** means the actual, alleged or constructive termination of an employment relationship between a **Claimant** and the **Insured Organization**, or the actual or constructive termination of an employment relationship between an **Outside Claimant** and an **Outside Entity**, in a manner or for a reason which is contrary to applicable law or public policy, or in violation of an **Employment Agreement**.

---

## III. EXCLUSIONS

A. This **Liability Coverage** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

1. for any actual or alleged damage to, or destruction of, loss of, or loss of use of, any tangible property including without limitation inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot;

2. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged bodily injury, sickness, disease, death, or loss of consortium; provided that this exclusion shall not apply to that portion of a **Claim** seeking **Loss** for emotional distress, mental anguish, humiliation, or loss of reputation;

3. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance, or the hazardous properties of nuclear material, including infectious nuclear waste or nuclear medical waste; provided that this exclusion shall not apply to **Claims** for **Retaliation**;

4. based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Pollution**; provided that this exclusion shall not apply to **Claims** for **Retaliation**;

5. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**;

6. for or arising out of facts, transactions or events which are or reasonably would be regarded as a **Wrongful Act**, about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**;

7. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct or indirect renewal or replacement;

8. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any **Retaliation** in connection with the Federal False Claims Act, any anti-kickback, self-referral or healthcare fraud and abuse law, including amendments thereto and regulations thereunder, or any similar or related federal, state or local law or regulation;

9. for any actual or alleged violation of responsibilities, duties or obligations under any law concerning social security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation; or for any actual or alleged violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; provided that this exclusion shall not apply to:

   a. **Claims** for **Retaliation**, other than a **Claim** to which exclusion A.8. above applies; or

   b. **Defense Expenses** in connection with a **Claim** for any actual or alleged violation of WARN or OSHA, or amendments thereto or regulations promulgated thereunder;

10. for any actual or alleged liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement;

11. for any actual or alleged violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee** or **Outside Employee** or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA; provided that this exclusion shall not apply to **Claims** for **Retaliation**;

12. for any actual or alleged violation of responsibilities, duties or obligations imposed on an **Insured** under the National Labor Relations Act (NLRA) or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for any actual or alleged lockout, strike, picket line, hiring of replacement workers or other similar action in connection with any labor dispute or labor negotiation;

13. based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any **Wrongful Act by a Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary**;

14. for a **Third Party Claim**:

    a. alleging price discrimination, or other violation of any antitrust or unfair trade practices law; or

    b. against an **Insured Person** solely due to their service in an **Outside Position**; or

15. for any actual or alleged liability under any agreement governing the terms of the labor or service of an **Independent Contractor**, temporary worker or leased employee with the **Insured Organization** or for liability under any agreement governing the terms of the labor or service of any natural person independent contractor who performs labor or service solely for the **Outside Entity** on a full-time basis pursuant to a written contract or agreement.

B. The Company shall have no duty to pay **Loss**, other than **Defense Expenses**, for any **Claim**:

1. seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any similar or related federal, state or local law or regulation;

2. seeking severance pay, damages or penalties under an express written **Employment Agreement**, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services; or

3. for an alleged violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion shall not apply to **Claims** for **Retaliation** or any actual or alleged violation of the Equal Pay Act.

The Company's maximum aggregate limit of liability for all **Defense Expenses** resulting from **Claims** for an alleged violation of responsibilities, duties or obligations imposed on an Insured under any **Wage and Hour Law**, except for **Claims** for **Retaliation** or any actual or alleged violation of the Equal Pay Act, shall be $100,000, which amount shall be part of and not in addition to, the applicable Limit of Liability set forth in the Declarations;

**IV.** **CONDITIONS**

A.   SETTLEMENT

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** shall refuse to consent to such Settlement Offer, the **Insured** shall be solely responsible for thirty percent (30%) of all Defense Expenses incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** shall also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** shall not exceed the remaining applicable limit of liability.

B.   OTHER INSURANCE

Except for **Claims** against **Insured Persons** for **Wrongful Employment Practices** in their **Outside Positions**, this **Liability Coverage** shall apply only as excess insurance over, and shall not contribute with any:

1.   fiduciary liability insurance or other insurance which applies to any claim for any violation of ERISA (other than Fiduciary Liability coverage, if purchased from the Company); or

2.   insurance which applies to any **Claim**:

a.   against an **Independent Contractor** or leased or temporary employee; or

b.   for a **Third Party Wrongful Act**.

With respect to **Claims** against **Insured Persons** for **Wrongful Employment Practices** in their **Outside Positions**, this **Liability Coverage** shall apply only as excess insurance over, and shall not contribute with: (1) any other valid and collectible insurance available to any **Insured**, including but not limited to any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; (2) any self-insurance or self-insurance program of the **Insured**, or any self-insured retention obligation assumed by the **Insured**, under any valid insurance, including but not limited to any healthcare professional liability insurance, any comprehensive general liability insurance, or any comprehensive healthcare liability insurance; or (3) indemnification to which an **Insured Person** is entitled from any **Outside Entity**. This **Liability Coverage** will not be subject to the terms of any other insurance.

C.   OUTSIDE POSITIONS – LIMIT OF LIABILITY

If any **Claim** against an **Insured Person** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for any **Loss**, for such **Claim** shall not exceed the largest single available limit of liability under such coverage.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND POLLUTION EXCLUSION ENDORSEMENT**

This endorsement changes the following:

**Health Care Organization Employment Practices Liability**

**It is agreed that:**

The following replaces section *III. EXCLUSIONS*, A. 4. of the **Liability Coverage:**

4.　　a.　　based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant;**

　　　　b.　　based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant;** or

　　　　c.　　brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant,**

provided that this exclusion will not apply to **Claims** for **Retaliation.**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCE-10001 Ed. 09-10　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 1
© 2010 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DELETE FEDERAL FALSE CLAIMS ACT RETALIATION EXCLUSION ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Employment Practices Liability**

**It is agreed that:**

Section **III. EXCLUSIONS**, A., 8. is deleted.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America

Policy Number: 106552379

HCE-19001 Ed. 01-15
© 2015 The Travelers Indemnity Company. All rights reserved.

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|

## INDEPENDENT CONTRACTORS ADDED AS INSURED PERSONS ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Employment Practices Liability**

**It is agreed that:**

The following is added to section **II. DEFINITIONS, O.** *Insured Person*:

> **Insured Person** also means any **Independent Contractor** of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, but only if and to the extent the **Insured Organization** provides indemnification to such natural person in the same manner as that provided to **Employees**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

HCE-19003 Ed. 01-15
© 2015 The Travelers Indemnity Company. All rights reserved.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEPARATE RETENTION FOR PHYSICIAN STAFF ENDORSEMENT

This endorsement changes the following:

**Health Care Organization Employment Practices Liability**

**It is agreed that:**

1. The following is added to section **III. CONDITIONS, B. RETENTION** of the Liability Coverage Terms and Conditions:

   The Retention for each **Claim** set forth in ITEM 5 of the Declarations will not apply to any **Physician Staff Claim** under the **Liability Coverage**, and instead, the **Physician Staff Claims** Retention set forth in ITEM 5 of the Declarations will apply to each **Physician Staff Claim**.

2. The following are added to section **II. DEFINITIONS** of the **Liability Coverage**:

   **Physician Staff Claim** means any **Claim** brought by or on behalf of any member of the **Physician Staff**.

   **Physician Staff** means a physician, physician assistant, surgeon, intern, extern, resident, osteopathic physician or surgeon, dentist, orthodontist, endodontist, or any other dental surgeon.

3. The following is added to ITEM 5 of the Declarations:

| | | |
|---|---|---|
| **Physician Staff Claims Retention:** | $50,000 | for each **Physician Staff Claim** under Insuring Agreement A. |
| | $50,000 | for each **Physician Staff Claim** under Insuring Agreement B, if applicable. |

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

© 2018 The Travelers Indemnity Company. All rights reserved.

| THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY. |
|---|

## FAILURE TO MAINTAIN INSURANCE EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

The following is added to **EXCLUSIONS APPLICABLE TO ALL LOSS:**

The Company will have no liability for **Loss** for any **Claim** based upon or arising out of the failure or omission on the part of the **Insured** to obtain, effect, maintain or adhere to any insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **106552379**

LIA-7011 Ed. 01-09 Printed in U.S.A.                                                     Page 1 of 1
©2009 The Travelers Companies, Inc. All Rights Reserved

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
| --- |

## AMEND SETTLEMENT CONDITION ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

**It is agreed that:**

Solely with respect to the **Liability Coverage** shown above, the following replaces section **CONDITIONS, A SETTLEMENT:**

A. SETTLEMENT

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** shall refuse to consent to such Settlement Offer, the **Insured** shall be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** shall also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** shall not exceed the remaining applicable limit of liability.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## AMEND DEFINITION OF OUTSIDE ENTITY TO INCLUDE
## ANY NON-PROFIT ENTITY ENDORSEMENT

This endorsement modifies the following:

**Health Care Organization Directors, Officers and Trustees Liability, Health Care Organization Employment Practices Liability**

---

**It is agreed that:**

Solely with respect to the **Liability Coverage** shown above, the following replaces section **II. DEFINITIONS,** *Outside Entity* of the **Liability Coverage:**

*Outside Entity* means a corporation or organization other than the **Insured Organization** that is a non-profit entity.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106552379

LIA-19095 Ed. 01-15                                                Page 1 of 1
© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MISSISSIPPI CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement modifies insurance provided under the following if applicable:

**Liability Policy**
**Kidnap and Ransom Policy**
**Identity Fraud Expense Reimbursement Policy**

**It is agreed that:**

The CANCELLATION section of this policy is replaced by the following:

CANCELLATION

The Company may cancel this policy for failure to pay a premium when due, in which case
**(twenty) (20)** days (number of days must equal or exceed twenty (20) days) written notice
shall be given to the **Named Insured or Insurance Representative**, unless payment in full is received within twenty (20) days of the **Named Insured or Insurance Representative's** receipt of such notice of cancellation. The Company shall have the right to the premium amount for the portion of the **Policy Period** during which this policy was in effect.

Subject to the provisions set forth in Liability Coverage Terms and Conditions Section III. CONDITIONS K. CHANGE OF CONTROL, if applicable, the **Named Insured or Insurance Representative** may cancel any coverage by mailing the Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations, such cancellation will be effective. In the event the **Named Insured or Insurance Representative** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The Company will not be required to renew this policy upon its expiration. If the Company elects not to renew, it will provide to the **Named Insured or Insurance Representative** written notice to that effect
**(thirty) (30)** days (number of days must equal or exceed thirty (30) days) before the
Expiration Date set forth in ITEM 2 of the Declarations. All cancellation and nonrenewal notices will be sent certified mail or delivered to the **Named Insured or Insurance Representative.**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106552379**

Page 1 of 1

LIA-5050 Ed. 11-07 Printed in U.S.A.
©2008 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT

# "B"

## IN THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI

CHAD DOWELL and KELSEY DOWELL,

      *Plaintiffs,*

-vs-

SOUTH SUNFLOWER COUNTY HOSPITAL; JW
DAVIS, PLLC; and
COURTNEY PHILLIPS,

      *Defendants.*

Cause No. 2023-0155



FILED

JUN 0 7 2023

CAROLYN HAMILTON
BY _____ D.C.

### COMPLAINT

Plaintiffs Chad Dowell and Kelsey Dowell (the "Dowells"), through counsel, file their complaint against Defendants South Sunflower County Hospital ("SSCH"), JW Davis, PLLC ("Davis") and Courtney Phillips ("Phillips") (jointly, "Defendants"). The Dowells assert claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1640, *et seq.*, in tort for abuse of process, slander of title, intentional infliction of emotional distress, and tortious interference with contract, and for breach of contract. In support thereof, the Dowells allege as follows:

### PARTIES

1.    The Dowells are citizens of the State of Minnesota and reside there.

2.    JW Davis, PLLC is organized under the laws of Mississippi with its principal place of business at 100 Court Avenue, Indianola, Mississippi 38751. Its sole member is Jonathan W. Davis, a citizen of the state of Mississippi. JW Davis, PLLC may be served with process through its registered agent, Jonathan W. Davis, at 100 Court Avenue, Indianola, Mississippi 38751 or wherever he may be found.

3.    Courtney Phillips is an adult citizen of the State of Mississippi. Phillips is the chief executive officer of SSCH but, at all times alleged in this complaint, committed tortious or

wrongful conduct in his individual capacity and outside the scope of his employment. He may be served at SSCH at 121 East Baker Street, Indianola, Mississippi 38571 or wherever he may be found.

    4.    SSCH is a county-owned hospital organized and doing business in the State of Mississippi with its principal place of business at 121 East Baker Street, Indianola, Mississippi 38571.

<u>JURISDICTION AND VENUE</u>

    5.    This Court has jurisdiction over the subject matter of this lawsuit and over the parties pursuant to Miss. Code Ann. § 9-7-81 because this case involves claims within the jurisdictional limits of this Court.

    6.    Venue is proper in this Court pursuant to Miss. Code Ann. § 11-11-3(1)(a)(i) because the Defendants reside in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

<u>FACTUAL ALLEGATIONS</u>

    7.    The Dowells are both physicians and, until July 2022, practiced medicine as employees of SSCH.

    8.    To induce the Dowells to practice medicine in the Mississippi Delta, SSCH promised to assume—and later forgive—the Dowells' student debt if they each signed promissory notes payable to SSCH.

    9.    Chad Dowell's promissory note (the "CD Note") was in the amount of $110,692, and that note is current.

    10.    Kelsey Dowell's promissory note (the "KD Note") was in the amount of $168,423, and SSCH has alleged Kelsey Dowell's note is in default with an outstanding principal of $154,387.75. SSCH has sued Kelsey Dowell under that note, but SSCH's lawsuit (the "SSCH

Lawsuit")—prosecuted by Davis and authorized by Phillips—arises from and involves tortious, wrongful, and actionable conduct as described in detail below.

11.     The KD Note provides SSCH acceleration rights only if one of the following conditions is met: (i) Kelsey Dowell files a bankruptcy petition; or (ii) Kelsey Dowell has been subjected to involuntary insolvency proceedings. When the SSCH Lawsuit was filed, neither condition had occurred and, to date, neither condition has occurred.

12.     Kelsey Dowell was served with the SSCH Lawsuit on September 22, 2022, and she had thirty (30) days to respond.

13.     According to the Summons served with the Complaint, Kelsey Dowell's response was due to be "mailed or delivered within (30) days," with the original of her response to be "file[d]...with the Clerk of this Court within a reasonable time afterward."

14.     With the 30th day falling on a Saturday, by operation of Mississippi Rule of Civil Procedure 6(a) Kelsey Dowell's response was due to be "mailed or delivered" on the next business day, which was Monday, October 24, 2022.

15.     On October 24, 2022—before expiration of Kelsey Dowell's deadline to mail or deliver her response to the Complaint, Davis filed papers to obtain a default judgment against Kelsey Dowell. In fact, Davis has admitted in a pleading filed with the Court in the SSCH Lawsuit that it filed such papers on 9:21 a.m. that day.

16.     During the afternoon of October 24, 2022, Kelsey Dowell's counsel contacted Davis on Kelsey Dowell's behalf, identified as her attorney and announced her intention to defend, and requested a brief extension of time in which to respond to the SSCH Lawsuit. That request was denied. Therefore, that same afternoon, Kelsey Dowell's counsel mailed a copy of Kelsey Dowell's Answer to the court and delivered by email a copy of that Answer to Davis. Stated another way, Davis prematurely sought—and persisted in pursuing—a default judgment despite

3

the fact that Kelsey Dowell timely answered and appeared through counsel.

17. The default judgment Davis obtained and pursued—besides being admittedly premature, procedurally defective, and grounded in misrepresentations of material fact—was improper for a separate reason.

18. Despite the plain and unambiguous language of the KD Note, which did not give SSCH acceleration rights, Phillips authorized Davis to sue on the entire principal, including by obtaining and pursuing a default judgment that was premature and grounded in misrepresentations of material fact about Kelsey Dowell's appearance, intention to defend, and response.

19. Davis and Phillips therefore engaged in wrongful conduct to obtain for SSCH contractual rights which it does not have under the KD Note. Even after being challenged about the impropriety of the suit and the manner in which a premature default judgment had been obtained and pursued, Davis and Phillips persisted in that wrongful conduct, including by executing on that judgment in Minnesota on accounts held by Chad Dowell and Kelsey Dowell's mother, neither of whom are (or could be) judgment debtors.

20. Davis' and Phillips' conduct was wrongful for a separate reason. At the time Phillips authorized and Davis obtained the premature default judgment, both Davis and Phillips knew the Dowells were party to other lawsuits in Sunflower County (the "Sunflower Lawsuits").

21. Moreover, Davis and Phillips knew that the parties to the Sunflower Lawsuits had reached a proposed resolution, but settlement could not be achieved if the Dowells were subject to a judgment lien on their property, including property located at 1400 Bayou Road, Indianola, Mississippi (the "Bayou Road Property").

22. Davis and Phillips knew that if they could obtain a premature default judgment, they could place a judgment lien on the Bayou Road Property and forestall settlement of the Sunflower Lawsuits, and they did exactly that.

4

23.     Because the Sunflower Lawsuits could not be settled, counsel for other parties to the Sunflower Lawsuits contacted Davis about—at a minimum—a release of the judgment lien as to the Bayou Road Property so settlement could occur. Moreover, counsel for other parties to the Sunflower Lawsuits explained to Davis that the Bayou Road Property had no equity, was under secured, and was subject to a deed of trust by a lienholder who primed the judgment lien Davis and Phillips had wrongfully obtained. In other words, the Bayou Road Property did not have, and never would have, any economic value to satisfy any part of the default judgment (even if that judgment was valid).

24.     Davis acknowledged this, but he boasted to at least one other lawyer that he would not set aside or partially release the judgment because he wanted to "leverage" Kelsey Dowell into agreeing to the judgment on the entire principal, which also included a 30-percent attorney fee penalty provision on the KD Note. In other words, Davis—with Phillips' knowledge, approval, and authorization—attempted to extort Kelsey Dowell through an abuse of judicial process and after having slandered title to the Dowells' property.

25.     Despite being placed on notice multiple times, through multiple emails, letters, and phone calls, regarding their wrongful acts, Davis and Phillips doubled down on their efforts to harm the Dowells including by causing accounts held by Kelsey Dowell, Chad Dowell, and Julie Shirley to be frozen. Davis and Phillips authorized and assisted in the attachment of $18,000 from at least two bank accounts in Minnesota.

26.     Davis is a debt collector under the Fair Debt Collection Practices Act ("FDCPA").

27.     Attorneys and law firms, like Davis, who engage in debt collection activities on behalf of their clients are "debt collectors" under the FDCPA.

28.     Davis holds itself out as a "debt collector." Its website describes its law practice as including "Creditors' Rights" and "Collections." *See* https://www.jwdavislaw.com/areas-of-

5

practice.

29.    Further, Davis engaged in debt collection vis-à-vis Kelsey Dowell, but no correspondence Davis sent to Kelsey Dowell before filing the SSCH Lawsuit contained any disclaimer that the correspondence was an attempt to collect a debt.

30.    In addition, Davis prematurely obtained a default judgment against Kelsey Dowell (and based that default judgment on misrepresentations of fact about her appearance, response, and intention to defend) for the entire amount of the principal plus a 30-percent penalty, which is an amount greater than that authorized by FDCPA.

31.    Together, Davis' and Phillips' concerted action caused the Dowells severe emotional distress, leaving them with no cash on hand on the eve of banking holidays between Christmas and New Years, rendering it difficult for them to meet other financial obligations, including those necessary to heat their home in Minnesota and care for their minor children.

32.    The wrongful conduct described above was confirmed when Davis eventually set aside the default judgment (after initially forcing Kelsey Dowell to file a motion to have the judgment set aside, then by opposing that motion, which compounded litigation costs unnecessarily) and released the attachment of funds held in Minnesota accounts.

33.    Separately, the CD Note obligates SSCH to pay to Chad Dowell an "ACO Payment" annually, with such payments being made in December.  Other physicians at SSCH received their ACO Payments in December 2022.

34.    SSCH has breached the CD Note by wrongfully and without justification refusing to pay Chad Dowell's ACO Payment, which was due in December 2022.

35.    Phillips and Davis caused SSCH to wrongfully withhold Chad Dowell's ACO Payment to extract additional "leverage" over Kelsey Dowell—that is, they intend for Chad Dowell's ACO Payment to be credited against the entire principal on the KD Note, which SSCH

6

has no right to collect and for which it wrongfully obtained a premature default judgment through the acts of Phillips and Davis.

36.     Phillips and Davis otherwise alleged Chad Dowell is not entitled to his ACO Payment because Chad Dowell failed to complete medical charts. This allegation is false.

37.     A physician at SSCH responsible for calculating and administering ACO payments, including Chad Dowell's ACO Payment, has admitted that Chad Dowell did, in fact, complete all of his medical charts and any claim that Chad Dowell did not complete medical charts is false.

38.     In other words, as part and parcel of their scheme to obtain a fraudulent default judgment against Kelsey Dowell for amounts SSCH is not contractually owed, Phillips and Davis also fabricated false claims and caused SSCH to wrongfully withhold Chad Dowell's ACO Payment, which is owed unconditionally.

39.     Chad Dowell is owed an ACO Payment of more than $100,000.

40.     In 2021, Chad Dowell's ACO Payment was approximately $100,000, and Phillips has told Chad Dowell that his ACO Payment would increase every year.

41.     By letter dated December 30, 2022, the Dowells placed Davis, Phillips, and SSCH on notice of these claims, including the factual basis for the claims, the damages caused, and the identities of those who engaged in the wrongful conduct.[1]

## COUNT I
## FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), 15 U.S.C. § 1692f

### (DAVIS)

42.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

43.     Davis is a "debt collector" as defined in the FDCPA because he uses interstate

---

[1] The Dowells expressly state the Mississippi Tort Claims Act does not apply to this litigation because claims are brought against Davis and Phillips for conduct outside the course and scope of their employment, and the claim against SSCH is contractual in nature. However, to the extent the MTCA may be deemed to apply, pre-suit notification requirements have been satisfied.

commerce or the mails in a business the purpose of which is to collect debts and/or because he regularly collects or attempts to collect debts owed to another.

44.    Kelsey Dowell is a "consumer" as defined in the FDCPA because she is a natural person allegedly obligated to pay a debt.

45.    The FDCPA prevents a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, including of any amount (including fees and charges incidental to the principal) unless such amount is expressly authorized by the agreement creating the debt.

46.    Davis violated the FDCPA by using unfair or unconscionable means, to-wit: (i) by prematurely seeking and obtaining a default judgment against Kelsey Dowell, including by relying on misrepresentations of material fact about Kelsey Dowell's failure to appear, respond to a complaint, or indicate an intention to defend despite the fact that Kelsey Dowell appeared through counsel, responded to the complaint, and indicated an intention to defend on the date her answer was due; (ii) by using the default judgment to "leverage"—i.e., extort—Kelsey Dowell into agreeing to an amount that was not owed to avoid the risk that the Sunflower Lawsuits could not be resolved; (iii) by using that default judgment to slander title to the Bayou Road Property; (iv) by causing Chad Dowell's ACO Payment to be withheld wrongfully, to attempt to coerce Kelsey Dowell's agreement to that improper default judgment; and (v) by attempting to apply Chad Dowell's ACO Payment to a debt Kelsey Dowell, and only Kelsey Dowell, allegedly owed.

47.    Davis further violated the FDCPA by obtaining the premature and fraudulent default judgment for the full amount of the KD Note and by attempting to collect on the full amount of the KD Note, despite the fact that the KD Note plainly and unambiguously did not confer acceleration rights.  Stated otherwise, Davis is collecting an amount in excess of the installment payments on the KD Note that are allegedly in arrears, which is the maximum amount that may be

collected on the KD Note.

48.     Davis' FDCA violations have caused Kelsey Dowell actual damages in ways and in amounts to be proven at trial.

49.     Therefore, Davis is liable for Kelsey Dowell's actual damages, the costs of the action, and a reasonable attorney's fee.

COUNT II

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(DAVIS AND PHILLIPS)

50.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

51.     Davis and Phillips, jointly and individually, have engaged in reckless, intentional, malicious, and extreme and outrageous conduct in the ways set forth herein, including: (i) by authorizing, obtaining, and pursuing a premature default judgment, abusing that judgment to extort Kelsey Dowell into agreement to a judgment that was improper and would have obligated her to pay SSCH amounts to which it was not contractually entitled; (ii) by abusing an improper default judgment to liquidate the Dowells' bank account during the holiday season, leaving them with no cash on hand; and (iii) by intentionally and wrongfully causing Chad Dowell's ACO Payment to be withheld to further extort Kelsey Dowell and otherwise cause the Dowells emotional distress.

52.     Davis' and Phillips' actions evoke outrage or revulsion in a civilized society.

53.     Davis' and Phillips' actions were directed at the Dowells and/or were intended to cause them harm, and they did cause the Dowells harm.

54.     The Dowells have suffered severe emotional distress proximately caused by Davis and Phillips, including but not limited to anxiety, depression, sleeplessness, worry, and other acute forms of mental anguish.

55.     The Dowells' emotional distress was not only reasonably foreseeable to Davis and Phillips, but it was also the intended effect of their extreme and outrageous conduct. The Dowells

have suffered emotional distress damages of at least $50,000 each, or $100,000 together, or in greater amounts to be proven at trial.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT AND CONTRACT EXPECTANCY

### (DAVIS AND PHILLIPS)

56.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

57.     Davis and Phillips knew the Dowells had a contract expectancy—i.e., a contemplated settlement agreement—in the Sunflower Lawsuit.

58.     Davis and Phillips intentionally interfered with, and attempted to destroy that contract expectancy, by authorizing, obtaining, and pursuing a premature default judgment, including through misrepresentations of material fact, and by using that default judgment to extort Kelsey Dowell into agreeing to the default judgment to avoid the risk of losing the settlement in the Sunflower Lawsuits.

59.     This instance of tortious interference caused the Dowells to suffer extreme emotional distress and needlessly incur attorneys' fees and other damages in amounts to be determined at trial.

60.     Separately but relatedly, Davis and Phillips knew Chad Dowell had a contract with SSCH regarding an ACO Payment, and they further knew Chad Dowell was contractually owed his ACO Payment without conditions.

61.     Davis and Phillips intentionally interfered with Chad Dowell's contract by creating and/or perpetuating a falsehood to justify not paying the ACO Payment and by interfering with SSCH's contractual obligation to make that payment.

62.     This instance of tortious interference has damaged Chad Dowell in at least the amount of $100,000 or greater amounts to be proven at trial, which represents the amount of the

ACO Payment he is unconditionally owed but which Davis and Phillips have caused to be withheld.

## COUNT IV
### BREACH OF CONTRACT AND
### BAD FAITH BREACH/BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (SSCH)

63.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

64.     The CD Note is a contract and obligates SSCH to pay Chad Dowell ACO Payments on an annual basis.

65.     SSCH has breached the CD Note by refusing to pay Chad Dowell's ACO Payment, which was due and paid to other doctors in December 2022.

66.     SSCH's breach has caused Chad Dowell to suffer damages in the amount of at least $80,000, or in greater amounts to be proven at trial.

67.     Separately, SSCH's breach was independently tortious and in bad faith because the breach was willful and malicious in ways described above.

68.     Because SSCH's breach was in bad faith, its failure to pay Chad Dowell's ACO Payment also constitutes a breach of the implied covenant of good faith and fair dealing in every contract.

## . COUNT V
### ABUSE OF PROCESS

### (DAVIS AND PHILLIPS)

69.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

70.     Davis and Phillips made an illegal use of process, to-wit: (i) they authorized, obtained, and pursued a default judgment before Kelsey Dowell's response to the SSCH Lawsuit was due; (ii) they pursued that default judgment after Kelsey Dowell appeared through counsel, timely responded to the SSCH Lawsuit, and announced her intention to defend; and (iii) they

pursued that default judgment based on representations that Kelsey Dowell had not appeared, had not timely answered, and had not announced her intention to defend.

71.     Davis and Phillips made an unauthorized use of that process, to-wit: they used that improper default judgment to attempt to "leverage" and extort Kelsey Dowell into agreeing to the judgment, which was for an amount more than Kelsey Dowell had a contractual obligation to pay.

72.     Davis and Phillips had an ulterior motive, to-wit: to cause Kelsey Dowell to pay an amount more than she contractually owed on installment payments that allegedly were in arrears.

73.     The Dowells sustained damage through the use of that abuse of process, to-wit: they needlessly incurred attorney's fees, they suffered emotional distress as described above, and they suffered the loss of funds from bank accounts through execution of an improper default judgment,

## COUNT VI
## SLANDER OF TITLE

### (DAVIS AND PHILLIPS)

74.     The Dowells incorporate the foregoing allegations as if fully set forth herein.

75.     Through the foregoing wrongful acts, Davis and Phillips falsely and maliciously caused the default judgment to issue, which created a judgment lien on the Bayou Road Property (and other property held by the Dowells in Sunflower County).

76.     This slander of title caused the Dowells special damages, including emotional distress damages and significant attorneys' fees and other costs and injuries.

### JURY DEMAND

77.     The Dowells demand a jury on all issues so triable.

### RELIEF IN THE ALTERNATIVE

78.     In the alternative only, and only if Davis and/or Phillips were deemed to have committed the wrongful conduct described above in the course and scope of their employment

12

with or for SSCH, then the Dowells assert against SSCH and are entitled to recover from SSCH under all claims pled in this complaint (Counts I – VI).

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Dowells respectfully request that this Court grant them relief, as follows:

(a) Enter judgment in their favor on Counts I through VI and award them all relief to which they may be entitled, including compensatory damages, consequential and incidental damages, punitive and exemplary damages, and attorneys' fees; and

(b) Award the Dowells any other legal or equitable relief to which they may be entitled.

Respectfully submitted,

CHAD DOWELL AND KELSEY DOWELL

Dated: June 5, 2023          By:     /s/ Chadwick M. Welch
                                     Chadwick M. Welch (MSB No. 105588)
                                     HEIDELBERG PATTERSON WELCH WRIGHT
                                     368 Highland Colony Parkway
                                     Ridgeland, Mississippi 39157
                                     Tel. 601.790.1588
                                     Fax 601.707.3075
                                     cwelch@hpwlawgroup.com

                                     *Their attorney*

OF COUNSEL:

Heidelberg Patterson Welch Wright
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1588
Fax 601.707.3075
mheidelberg@hpwlawgroup.com

# EXHIBIT

# "C"



161 N. Clark Street
10th Floor
Chicago, IL 60601

Meredith Fox
Claim Counsel
Bond & Specialty Insurance Claim
Phone: (312) 458-6463
Fax: (800) 228-9960
Email: MSFOX@travelers.com

August 11, 2023

**VIA EMAIL ONLY:** JMalatesta@hatlawfirm.com

South Sunflower County Hospital
C/O: Jacob Malatesta
Attorney/Shareholder
Hat Law Hagwood and Tipton

RE:    Insured Name:    South Sunflower County Hospital
        Policy No.:    087-LB-106552379
        Reference No.:    T2310540
        Subject:    Chad Dowell

Dear Jacob:

This letter further acknowledges Travelers Casualty and Surety Company of America's ("Travelers") receipt of the above-captioned matter.

Based on our review of the materials provided to us, and for the reasons set forth below, Travelers must disclaim coverage for this matter under the above-referenced 087-LB0-106552379 (the "Policy"). Please note that certain terms in this letter are defined terms under the Policy. Kindly refer to the Policy for the specific meanings of those terms.

**The Policy**

We reviewed your submission under the Policy Travelers issued to South Sunflower County Hospital ("SSCH") for the Policy Period from July 01, 2022, to July 01, 2023. When applicable, the Company's Limit of Liability, inclusive of Defense Expenses, is $1,000,000.00 for all Claims under all Liability Coverages.[1] Defense Expenses reduce and may exhaust the Company's Limit of Liability. Note further that the Policy specifies a $15,000 retention[2] for each Claim which applies to all otherwise-covered Loss, including Defense Expenses.

**Background**

On July 07, 2023, Travelers received a copy of a complaint ("Complaint") filed jointly by Chad Dowell and Kelsey Dowell ("Plaintiffs") with the Circuit Court of Sunflower County file stamped June 07, 2023, naming SSCH, JW Davis ("Davis"), PLLC, and Courtney Phillips (Chief Executive Officer of SSCH) as defendants ("Defendants"). The Complaint contains the following six counts: (1) Fair Debt Collection Practices ("FDCPA"), (2) Intentional Infliction of Emotional Distress, (3) Tortious Interference with Contract and Contract Expectancy, (4) Breach of Contract and Bad

---

[1] See Item 12 of the Policy's Declarations. As indicated in Item 4 of the Policy's Declarations, SSCH purchased the following Liability Coverages: Health Care Organization Directors, Officers and Trustees Liability ("D&O") and Health Care Organization Employment Practices Liability ("EPL").

[2] Had this matter implicated the EPL Coverage Section, which it does not, the Separate Retention for Physician Staff Endorsement provides that the retention for this matter would be $50,000.00.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to MSFOX@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

**Travelers**

August 11, 2023
Page 2

Faith/Breach of Covenant of Good Faith and Fair Dealing, (5) Abuse of Process, and (6) Slander of Title.

Generally, the Plaintiffs allege they each entered into promissory notes with SSCH under which SSCH promised to assume, and later forgive, their respective student debts. Kelsey Dowell's promissory note (the "KD Note") contained an acceleration clause which SSCH allegedly wrongfully exercised claiming she defaulted on the KD Note. SSCH, through its counsel and co-defendant, JW Davis, PLLC ("Davis"), filed a lawsuit against her and obtained a default judgment against her. The Plaintiffs allege they were involved in other lawsuits in Sunflower Count which they were unable to settle due to the default judgment, and Davis and SSCH refused to release the judgment lien in an effort to wrongfully leverage the Kelsey Dowell into agreeing to the judgment.

The Plaintiffs seek relief to which they may be entitled, including compensatory, consequential, and incidental, punitive, and exemplary damages, attorneys' fees, and any other legal or equitable relief to which they may be entitled.

## Coverage Discussion - Health Care Organization Directors, Officers and Trustees Liability

The Insuring Agreement of the D&O coverage section states as follows:

> The Company shall pay on behalf of:
>
> A.  the Insured Persons Loss for Wrongful Acts, except for Loss which the Insured Organization pays to or on behalf of the Insured Persons as indemnification;
>
> B.  the Insured Organization Loss for Wrongful Acts which the Insured Organization pays to or on behalf of the Insured Persons as indemnification; and
>
> C.  the Insured Organization Loss for Wrongful Acts;
>
> resulting from any Claim[3] first made during the Policy Period, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

As an initial matter, Section II of the D&O Coverage Section defines Insured as the Insured Persons and the Insured Organization. Section II goes on to define Insured Person as:

> 1.  any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, **LLC Manager**, member of the board of trustees, member of the board of regents, member of the board of governors, or a functional equivalent thereof, **Executive Officer, Employee**, or member of a duly constituted committee of the **Insured Organization**;
>
> 2.  any employee of an independent management organization acting as an officer or as the administrator of the **Insured Organization** pursuant to a

---

[3] Section II(B) states that "A Claim shall be deemed to be made on the earliest date such written notice is received by an Executive Officer." Pursuant to communications with SSCHI, the claim was made sometime after June 07, 2023, when SSCHI received notice of the Complaint.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to MSFOX@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

**Travelers**

August 11, 2023
Page 3

> written contractual agreement with the **Insured Organization** and solely while performing his or her duties in such capacity as specified by such contract; or
>
> 3. **any Independent Contractor**, but only while acting in his or her capacity as such, and only if the **Insured Organization** actually indemnifies such **Independent Contractor** for liability arising out of any **Claim**.
>
> In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

The Insured Organization is Defined in Section II of the D&O Coverage Section as the Named Insured and any Subsidiary.

Davis is not an Insured and, therefore, is not entitled to any coverage, including for Defense Expenses, under the D&O Coverage Section. However, the Complaint constitutes a Claim against SSCH and Courtney Phillips. Nevertheless, Liability Coverage is not available under the D&O Coverage section as it has been brought by former Employees of the Insured and is therefore subject to the exclusion found in Sec. III.A.10. which provides,

> A. This Liability Coverage shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse Defense Expenses for, any Claim:
>
> 10. by or on behalf of, or in the name or right of, any Insured[4]...

The Dowells are Insured Persons as they were Employees of the Insured Organization. Therefore, Exclusion III(A)(10) applies to preclude coverage for this matter in its entirety under the D&O Coverage Section. Based on the foregoing there is no Liability Coverage whatsoever available under the D&O Coverage section of the Policy.

Additionally, coverage for this matter in regard to Count II of the Complaint which alleges intentional infliction of emotional distress and breach of contract is precluded pursuant Exclusions A.2 and A.15 to the D&O Coverage Part, which states that the D&O Coverage Part shall not apply to, and Travelers shall have no duty to defend or to pay, advance or reimburse Defense Expenses for any Claim:

> 2. based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion shall not apply to a) allegations of emotional distress, mental anguish, humiliation, or loss of

---

[4] Insured is defined in the Policy as the Insured Person and the Insured Organization. Insured Person is further defined as any natural person who was, is or becomes a duly elected or appointment member of the board of directors…Executive Officer, Employee, or member of a duly constituted committee of the Insured Organization. See Sections II(N), (O) & (P).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to MSFOX@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 08/09/14                                                                                                                              L-07C-b

**Travelers**

August 11, 2023
Page 4

reputation if and only to the extent that such allegations are made by a current, former or prospective member of the Health Care Staff as part of a Claim relating to Peer Review or Credentialing activities, or b) invasion of privacy arising out of, or in any way relating to a HIPAA Violation[.]

15. based upon, alleging, arising out of, or in any way relating to, directly or indirectly any actual or alleged liability of any **Insured** under any express contract or agreement; provided that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement, and that, for the purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making;

## Coverage Discussion - Health Care Organization Employment Practices Liability

Insuring Agreement A of the EPL Coverage Part indicates that Travelers shall pay on behalf of the Insured Loss for any Employment Claim first made during the Policy Period, or any Extended Reporting Period that applies, for a Wrongful Employment Practice.

Policy Section II, Definition G, of the EPL Coverage Part defines "Employment Claim" as:

1. a written demand for monetary damages or non-monetary relief;
2. a civil proceeding commenced by service of a complaint or similar proceeding;
3. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission of any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, Employment Claim shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary or non-monetary relief;
4. an arbitration, mediation or similar alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the Insured agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or
5. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an Insured by or on behalf of or for the benefit of a Claimant, or against an Insured Person serving in an Outside Position by or on behalf of or for the benefit of an Outside Claimant, for a Wrongful Employment Practice; provided that Employment Claim does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, any type of criminal proceeding, or any Peer Review activities.

Policy Section II of the EPL Coverage Part defines Wrongful Employment Practices as any actual or alleged:

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to MSFOX@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 08/09/14                                                                                                                L-07C-h

Travelers

August 11, 2023
Page 5

1.    Discrimination;
2.    Retaliation;
3.    Sexual Harassment;
4.    Workplace Harassment;
5.    Wrongful Termination;
6.    breach of Employment Agreement; [5]
7.    violation of the Family Medical Leave Act;
8.    employment-related misrepresentation;
9.    defamation, including libel or slander, or invasion of privacy;
10.   failure to create or enforce adequate workplace or employment policies and procedures, employ or promote, or grant tenure;
11.   wrongful discipline, denial of training, deprivation of career opportunity, denial or deprivation of seniority, or evaluation; and
12.   negligent hiring, supervision of others, training, or retention, but only if such act is alleged in connection with a Wrongful Employment Practice set forth in 1. through 11. above.

The Complaint does not assert any Wrongful Employment Practices; therefore, it does not constitute an Employment Claim within the meaning of Insuring Agreement A of the EPL Coverage Part. The Complaint does not allege any violation of the Physician Employment Agreement which was entered into by the Plaintiffs and SSCH. Instead, the Complaint alleges breach of a promissory note which is an agreement separate from, and not referenced by, the Physician Employment Agreement, and therefore does not meet the definition of a written Employment Agreement. Therefore, the Insuring Agreement of the EPL Coverage section is not implicated.

## Conclusion

Because we view the foregoing as dispositive of coverage for this matter, we have not raised other Policy terms, conditions, limitations or exclusions that may further limit or exclude coverage for this matter. As I am sure you can appreciate, Travelers' attention to this matter is subject to a full and complete reservation of all rights, remedies and defenses under the Policy or otherwise including but not limited to the right to raise other Policy terms and conditions as defenses to coverage in the future as appropriate.

Neither this letter, nor any actions by Travelers or any of its agents shall constitute or be deemed a waiver of any right or defense available to Travelers under the Policy or applicable law.

Sincerely,

*Meredith S. Fox*

Meredith S. Fox
Claim Counsel

---

[5] Employment Agreement means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

*************************** **Our toll-free number is 800-842-8496** ***************************
If possible, please send future communications and documents concerning this claim via email to MSFOX@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).